## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**JAMES J. LUKEZIC,**
 40 Wall Street, 28th floor
 New York, NY 10005

   *Plaintiff,*

  v.

**FINANCIAL INDUSTRY REGULATORY
AUTHORITY, INC.,**
 1735 K Street NW
 Washington, DC 20006

**UNITED STATES SECURITIES &
EXCHANGE COMMISSION,**
 100 F Street NE
 Washington, DC 20549

**DAVID SALTIEL, Director of the Division
of Trading and Markets for the United
States Securities & Exchange Commission,
in his individual and/or official capacities,**
 100 F Street NE
 Washington, DC 20549

   *Defendants.*

Case No. 1:25-CV-00623

Jury Trial Demanded

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
## OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING
## ORDER AND PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 1

PROCEDURAL HISTORY ........................................................................................... 4

LEGAL STANDARD .................................................................................................... 7

ARGUMENT ................................................................................................................. 7

    I.     PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS........................... 7

       A.   FINRA'S Disciplinary Proceeding Violates Plaintiff's Seventh Amendment Right to a Jury Trial. ................................................................................................................ 7

       B.   FINRA's Proceedings Violate Article II's Nondelegation Doctrine ........................... 11

       C.   FINRA's Disciplinary Proceedings Violate Due Process ............................................ 12

    II.    PLAINTIFF WILL SUFFER IRREPARABLE HARM ABSENT INJUNCTIVE RELIEF 15

    III.   THE BALANCE OF EQUITIES FAVORS PLAINTIFF ........................................... 18

    IV.   AN INJUNCTION SERVES THE PUBLIC INTERESTS .......................................... 19

       A.   Enjoining the publication of defamatory information greatly serves public interests. . 19

       B.   The preservation of enumerated constitutional rights serves public interests. ............. 21

CONCLUSION .............................................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**

*Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*, 23-5129, 2023 WL 4703307 (D.C. Cir. July 5, 2023) ............................................................................................................................................ 2

*Apprendi v. New Jersey*, 530 U.S. 466 (2000) ................................................................................ 16

*Atlas Roofing Co., Inc. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442 (1977) 8, 10

*Axon Enter. v. FTC*, 598 U.S. 175 (2023) ........................................................................................ 9

Berryhill v. Gibson, 331 F. Supp. 122 (M.D. Ala. 1971) ............................................................... 16

*Bridges v. California*, 62 S. Ct. 190 (1941) .................................................................................... 20

*Brookhart v. Janis*, 86 S. Ct. 1245 (1966) ....................................................................................... 4

*District of Columbia v. Eastern Trans-Waste of Md., Inc.*, 758 A.2d 1 (D.C. 2000) .................. 15

*District of Columbia v. Group Ins. Admin.*, 633 A.2d 2 (D.C. 1993) ........................................... 17

*Elrod v. Burns*, 427 U.S. 347 (1976) .............................................................................................. 16

*Gibson v. Berryhill*, 411 U.S. 564  (1973) ...................................................................................... 16

*Granfinanciera, S. A.* v. *Nordberg*, 492 U.S. 33 (1989) .................................................................. 8

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803) ...................................................................... 11

*Mertens v. Hewitt Associates*, 508 U.S. 248 (1993) ........................................................................ 8

*Miller v. United States*, 209 A.3d 75 (D.C. 2019) ......................................................................... 16

*Murray's Lessee v. Hoboken Land Improv. Co.*, 59 U.S. (18 How.) 272 (1855) ........................... 9

*NASD v. SEC*, 431 F.3d 803 (D.C. Cir. 2005) ............................................................................... 11

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325 (2018) .................. 8

*Stanley v. Illinois*, 405 U.S. 645 (1972) ......................................................................................... 18

*Starbucks Corp. v. McKinney*, 602 U.S. 339 (2024) ........................................................................ 7

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) ................................................................ 10

*Trump v. United States*, 603 U.S. 593 (2024) ................................................................................ 21

*Tull v. United States*, 481 U.S. 412 (1987) .................................................................................... 10

*United States v. Nixon*, 418 U.S. 683 (1974) ................................................................................ 21

*Walter E. Lynch Co., Inc. v. Fuisz*, 862 A.2d 929 (D.C. 2004) .................................................... 19

*West v. Atkins*, 487 U.S. 42 (1988) ................................................................................................ 12

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .............................................................. 7

*Wisconsin Gas Co. v. FERC*, 758 F.2d 669 (D.C. Cir. 1985) ....................................................... 17

**Statutes**

15 U.S.C. § 78d ................................................................................................................................. 2

15 U.S.C. § 78s ............................................................................................................................. 2, 4

15 U.S.C. § 78u-2 ................................................................................................................... 3, 10, 11

17 CFR 200.54 ................................................................................................................................ 14

1975 U.S.C.C.A.N. 179 ................................................................................................................. 11

5 U.S.C. § 557 ................................................................................................................................ 14

Dodd-Frank Act § 929P(a) .............................................................................................................. 3

**Other Authorities**

75 FR 41254 (July 15, 2010) (Order Approving File No. SR-FINRA-2010-012) ...................... 20

Executive Order No. 14219, 50 Fed. Reg. 10583 (February 19, 2025) ........................................ 21

FINRA Disciplinary Proceeding No. 2014039285401 ................................................................ 15

FINRA Form U4 (05/2009) ............................................................................................................. 4

FINRA Regulatory Notice 09-17 .................................................................................................... 6

FINRA Regulatory Notice 15-50 ................................................................................ 20
Securities Exchange Act Release No. 62476 (July 8, 2010) ...................................... 20

**Rules**

FINRA Bylaws, Article V, Section 4 ............................................................................ 2
FINRA Rule 1015 ................................................................................................. 12, 13
FINRA Rule 2010 ...................................................................................................... 22
FINRA Rule 2210 ...................................................................................................... 20
FINRA Rule 9120 ........................................................................................................ 3
FINRA Rule 9136 ...................................................................................................... 12
FINRA Rule 9147 ...................................................................................................... 12
FINRA Rule 9150 ...................................................................................................... 12
FINRA Rule 9235 ...................................................................................................... 12
FINRA Rule 9252 ........................................................................................................ 8
FINRA Rule 9263 ...................................................................................................... 12
FINRA Rule 9280 ...................................................................................................... 12
FINRA Rule 9285 ...................................................................................................... 12
FINRA Rule 9810 ...................................................................................................... 22
FINRA Rules 9251-53 ............................................................................................... 12
FINRA Rules 9267-68 ............................................................................................... 12

**Constitutional Provisions**

U.S. Const., art. II, § 1 .............................................................................................. 2
U.S. Const., art. II, § 3 ............................................................................................. 12

# INTRODUCTION

PLAINTIFF, James J. Lukezic ("Mr. Lukezic" or "Plaintiff"), by and through undersigned counsel, respectfully submits this memorandum of law in support of his emergency motion for a temporary restraining order ("TRO") and preliminary injunction enjoining Defendants, Financial Industry Regulatory Authority ("FINRA") and the United States Securities and Exchange Commission ("SEC") (collectively, "Defendants"), from proceeding with FINRA's unlawful disciplinary proceeding against Plaintiff and from continuing the publication of prejudicial and defamatory statements against him.

Absent immediate injunctive relief, Plaintiff will suffer irreparable harm due to the deprivation of his constitutional rights, including his Seventh Amendment right to a jury trial and his due process rights under the Fifth Amendment. Furthermore, FINRA's ongoing publication of its allegations against Plaintiff exacerbates the harm by prejudicing his right to an impartial adjudication. As such, emergency relief is necessary to preserve the status quo and prevent further constitutional violations.

# STATEMENT OF FACTS

In January 2001, Plaintiff James. J. Lukezic ("Plaintiff" or "Mr. Lukezic") became licensed by Defendant FINRA[1] upon passing the requisite industry exams and affiliating with Fam Distributors, Inc. (CRD No. 4100). Upon doing so, Mr. Lukezic became a *broker*, triggering the legal requirement that he register with a national securities association—more commonly known

---

[1] As used herein, "FINRA" also pertains to FINRA's predecessor, the National Association of Securities Dealers ("NASD").

today as a self-regulatory organization ("SRO").[2] As written, the Securities Exchange Act of 1934 ("Exchange Act") presumes the formation of more than one SRO. Yet despite Congress's vision of the existence of more than a single SRO, for all intents and purposes,[3] FINRA is currently the only SRO registered with the Securities and Exchange Commission ("SEC").[4] Since becoming a broker, Mr. Lukezic has been subject to the National Association of Securities Dealers ("NASD"), and subsequently FINRA, jurisdiction, at all times.[5]

FINRA derives its authority from the SEC. Through the power vested in it by Congress, the SEC approved the creation of FINRA, on July 26, 2007.[6] FINRA was created by consolidating the NASD and the New York Stock Exchange's regulatory division. As the court noted in *Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*, FINRA is not a government agency. It is private corporation "responsible for regulating securities brokers."[7]

The SEC is a statutorily-appointed government agency empowered and governed by the Exchange Act.[8] SEC commissioners are properly appointed by the President of the United States (the "President"), under the U.S. Constitution's Appointments Clause,[9] and the SEC and its

---

[2] 15 U.S.C. § 78o(a)(1), (b).

[3]    FINRA, *How FINRA Serves Investors and Members*, available at https://www.finra.org/about/how-finra-serves-investors-and-members, (last visited February 22, 2025) FINRA currently regulates "more than 325,000 member firms with more than 625,000 registered representatives" and the SEC does not publish or disclose the number of individuals exempted from FINRA registration publicly.

[4] 15 U.S.C. § 78o(a)(1), (b)(1), (b)(8)-(9) exempts registration with a nation securities association for those transacting securities exclusively on a securities exchange of which they are members, or the SEC exempts such person.

[5] FINRA Bylaws, Article V, Section 4.

[6] 15 U.S.C. § 78o-3 "Registered securities associations"

[7] *Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*, 23-5129, 2023 WL 4703307, at *3 (D.C. Cir. July 5, 2023) (Walker, J. concurring); 15 U.S.C. § 78s (g)(1)

[8] 15 U.S.C. § 78d "Securities and Exchange Commission"

[9] U.S. Const., art. II, § 1.

commissioners are properly empowered with executive authority. As such, the SEC is directly restricted to a public entity by the Seventh Amendment.

In contrast, FINRA simply anointed its employee—the individual presiding over claims adjudicated in OHO proceedings—with the title of "Hearing Officer."[10] Every hearing officer is selected by a "Chief Hearing Officer,"[11] who is also a FINRA employee. Unsurprisingly, the Chief Hearing Officer is *designated* by yet another FINRA employee with the title of Chief Executive Officer ("CEO").[12] The CEO of FINRA is *not* appointed by the President under the Article II Appointments Clause. Rather, FINRA's CEO is *chosen* by the FINRA Board of Directors. When it comes to the individuals who comprise the FINRA Board of Directors, FINRA's Nominating Committee (also chosen *inter se* by FINRA) nominates fifteen (15) of the board members, and the remaining seven (7) members are voted on by FINRA members. In short, there are no officers at FINRA who were properly appointed pursuant to the Article II Appointments Clause.

Since the passage of the Dodd-Frank Act, the SEC has been allowed to bring enforcement actions either in-house, absent the procedural and structural protections of an Article III court, or in Article III courts, with attendant procedural and structural protections.[13] In contrast, FINRA exclusively prosecutes enforcement actions using its in-house forum, known as the "Office of Hearing Officers" ("OHO"). There is no consideration by FINRA of whether the enforcement proceeding constitutes "a suit in common law," nor whether Congress has established or defined a "public right," by which Article II administrative courts can adjudicate FINRA's claims. The SEC affirmatively approved of FINRA's exclusive use of in-house adjudication to prosecute its

---

[10] FINRA Rule 9120(r).
[11] *Id.*
[12] *Id.* at (b).
[13] Dodd-Frank Act § 929P(a), 15 U.S.C. § 78u-2(a).

members on a discretionary basis.[14] Notwithstanding the plainly-obvious and irreconcilable conflict with the Supreme Court's mandate that waivers of constitutional rights must be made knowingly and voluntarily,[15] FINRA argues that its members have waived their constitutional rights, as a result of signing the FINRA Form U4. The Form, a contract of adhesion—the signing of which is required by statute for those that wish to be brokers—lacks any mention of or reference to constitutional rights and has absolutely no mutuality. However, it requires the signor to "submit to [FINRA's] authority" and jurisdiction—including the use of Defendant's arbitration forum, OHO—to arbitrate any allegations by Defendant, against a broker.[16]

## PROCEDURAL HISTORY

In or around December 20, 2021, Defendant FINRA initiated an inquiry (Matter No. 20210704082) into Mr. Lukezic and his broker-dealer, Old Slip Capital Management ("Old Slip"), to determine "**whether violations of the federal securities laws** or FINRA rules have occurred." (Emphasis added) (Exhibit 1). A year later, on December 16, 2022, FINRA informed Mr. Lukezic that it was "review[ing] to determine the accuracy of [Old Slip]'s financial books and records under Matter No. 20220766890." (Exhibit 2). In this same correspondence, FINRA referenced "Examination Number: 20220734250." *Id.* Without explanation or notice, FINRA subsequently redesignated this examination as "Matter No. 20220734250," on or about May 5, 2023, in a communication from Michael Newman, Sr. Counsel, FINRA Department of Enforcement ("Newman") (Exhibits 3-4). In this communication, Newman stated FINRA was investigating

---

[14] 15 U.S.C. § 78s(b)(2), *et seq*.
[15] *Brookhart v. Janis*, 86 S. Ct. 1245, 1249-50 (1966) Establishing that the waiver of a constitutional right requires that the party waiving "**intelligently and knowingly** . . . [also characterized by the court as] **knowingly and freely**" agree to the waiver of his constitutional right(s). (emphasis added).
[16] FINRA Form U4 (05/2009) §15A, ¶ 2.

"**whether violations of the federal securities laws** or FINRA, NASD, or MSRB[17] rules have occurred." (Emphasis added) (*Id.*).

Several months later, FINRA published the below defamatory and unfounded allegations about Mr. Lukezic to its BrokerCheck.org website:

> James Lukezic was named a respondent in a FINRA complaint alleging that he placed mutual fund exchanges with a total principal value of approximately $1.1 million in the accounts of five customers with the customers' authorization. The complaint alleges that Lukezic's unauthorized trading in the five customers' accounts caused losses of approximately $44,500. All customers complained that the [ *sic* ] had not authorized any of the mutual fund exchange transactions that were made in their accounts. The day following the trades, Lukezic placed a call to the firm's affiliated transfer agent, which was record [ *sic* ], and asked how the firm would be paid on the mutual fund exchanges. The transfer agent representative informed Lukezic that the mutual fund exchanges were ineligible for commissions. Over the next several months, the transfer agent cancelled and reversed the mutual fund exchange transactions in the accounts of the customers and returned the original mutual fund holdings to their accounts. On subsequent calls with the transfer agent, Lukezic stated that he did not effect the exchanges at issue. The complaint also alleges that Lukezic provided false and misleading written statements to FINRA in response to requests in connection [ *sic* ] its investigation of the matter. Lukezic falsely stated that his firm did not have the ability to execute trades on the transfer agent's platform. In latter written responses to FINRA, Lukezic falsely stated that he was not involved in placing any trades. The complaint further alleges that Lukezic provided false and misleading on-the-record testimony to FINRA as he denied executing the mutual fund exchanges for the customers.

Available at https://brokercheck.finra.org/individual/summary/4284800 (last visited Feb. 24, 2025).

---

[17] *Blount v. SEC*, 314 U.S. App. D.C 52, 61 F.3d 938, 941 (1995) observing that "**MSRB Rule[s] operate[]** not as a private compact among brokers and dealers, but **as federal law**." (Emphasis added); *Id.* (distinguished because the SRO was created by Congress, but not relevant to the Court's holding, as indicted by the Court "put to one side" that fact and focused on **the MSRB rule at issue equating to federal law**.) *Id.*

During his painstaking efforts to: (1) comprehend how details of FINRA's purportedly confidential investigations were publicized;[18] and (2) engage with FINRA to address material inaccuracies in the published information, Mr. Lukezic discovered that Melissa Turitz, Director of FINRA Department of Enforcement, was spearheading the investigations against him. Decades prior, Ms. Turitz was a student at Princeton University, when Mr. Lukezic served as a visiting lecturer at the Woodrow Wilson School of Politics. During that period, Mr. Lukezic declined Ms. Turtiz's romantic overtures at multiple "Tiger Inn" social functions. Upon discovering this significant conflict of interest, Mr. Lukezic immediately notified FINRA on September 30, 2024. While FINRA appeared to remove Ms. Turitz from the investigations following this disclosure, it provided no explanation regarding her prior involvement, nor any assurances that her past connection with Mr. Lukezic had not influenced the investigations.

On December 17, 2024, FINRA Department of Enforcement filed its formal disciplinary complaint ("FDC") against Mr. Lukezic in FINRA's OHO—a non-Article III forum—initiating Disciplinary Proceeding No. 2022073425001. This filing comes nearly six (6) months after the Supreme Court's landmark decision in *SEC v. Jarkesy*, which held that the "use of in-house hearings to seek civil penalties violates the Seventh Amendment right to a jury trial." 144 S. Ct. at 2139-40 (Gorsuch and Thomas, JJ., concurring). The FDC culminated a three-year investigation spanning multiple FINRA offices—including but not limited to Boston, Woodbridge (NJ), and Los Angeles—conducted under three (3) separate Matter Numbers (inexplicably also termed

---

[18] FINRA Regulatory Notice 09-17, at p. 2-3, asserting that "[a]ll FINRA **investigations are non-public and confidential**" and explaining that "[i]nformation acquired during an investigation may be disclosed in connection with an investigation or disciplinary proceeding, in response to requests from the [SEC] or other governmental agencies and pursuant to lawfully issued subpoena and/or information-sharing agreements entered into between FINRA and other regulators.") (Emphasis added).

"Examination Numbers" by FINRA). Through this protracted and invasive investigation, FINRA ultimately charged Mr. Lukezic with two (2) violations: unauthorized trading (FINRA Rule 2010) and providing false and misleading information to FINRA (FINRA Rule 8210).

On February 17, 2024, pursuant to FINRA Rule 9251, FINRA produced its evidence to Mr. Lukezic. Unsurprisingly, the thousands of pages of documents comprising the production contain no evidence that FINRA took any measures to investigate, evaluate, or remediate the potential compromise of its investigation stemming from Ms. Turitz's involvement—a clear deviation from FINRA's statutory obligation to "provide a fair procedure for the disciplining of members." 15 U.S.C. §§ 78s(c), 78o-3(b)(8).

## LEGAL STANDARD

To obtain emergency injunctive relief, Plaintiff must demonstrate that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction serves the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Starbucks Corp. v. McKinney*, 602 U.S. 339, 339 (2024).

## ARGUMENT

## I.   PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS

### A. FINRA'S Disciplinary Proceeding Violates Plaintiff's Seventh Amendment Right to a Jury Trial.

FINRA is seeking civil penalties against Mr. Lukezic that "are designed to punish and deter, not to compensate," which necessarily involves "a type of remedy at common law that could only be enforced in courts of law." *Jarkesy*, 144 S. Ct. at 2130 (majority op.). Plaintiff urges this Court to consider the *appropriateness* of Congress's divestment of jurisdiction from Article III

courts, to an in-house tribunal: whether "Congress *properly* assign[ed Mr. Lukezic's] matter to adjudication in a non-Article III tribunal." (emphasis added) *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC,* 584 U.S. 325, 345 (2018) (citing *Granfinanciera, S. A.* v. *Nordberg*, 492 U.S. 33, 53–54 (1989)); *accord Atlas Roofing Co., Inc. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442, 450–455 (1977).

The *Jarkesy* Court made clear that it is unconstitutional for Congress to assign matters to a non-Article III tribunal, where the prosecuting entity seeks "money damages [which] are the prototypical common law remedy." 144 S. Ct. at 2129 (citing *Mertens v. Hewitt Associates*, 508 U.S. 248, 255 (1993)). Deprived of the structural and procedural protections that are inherent to a public trial before an independent judge and jury, "[t]hings look very different in agency proceedings." *Id.* at 2141 (Gorsuch, J., concurring). For various reasons, including "no general right of discovery," limited subpoena power that is a discretionary call of the ALJ,[19] a compressed timeline "even in the most complex matters," non-enforcement of the hearsay rule with testimony "taken outside the presence of the defendant or his counsel" and submitted in writing,[20] *Id.* at 2141; see FN19 (revealing the same deficiencies in FNRA's in-house proceedings). The *Jarkesy* Court concluded that "the Securities and Exchange Commission's use of in-house hearings to seek civil penalties violates the Seventh Amendment right to a jury trial." *Id.* at 2139; *cf. Milstead v. W.P.*

---

[19] FINRA Rule 9252 requiring that all requests for FINRA's version of a subpoena "be submitted to the Hearing Officer" for her to grant "*only*" if she concludes that the requesting party has adequately shown "that: the information is relevant, material, and non-cumulative; the requesting Party has previously attempted in good faith to obtain the desired Documents and testimony through other means but has been unsuccessful in such efforts; and each of the persons from whom the Documents and testimony are sought is subject to FINRA's jurisdiction." And, even if the preceding, subjective conditions are all met, "the Hearing Officer shall consider whether the request is unreasonable, oppressive, excessive in scope, or unduly burdensome, and whether the request should be denied, limited, or modified."

[20] See FN23, *infra.*

*Ballard Co.*, 76 A.2d 589 (D.C. 1950) (reversing the trial court's grant of summary judgment in part, because "a party cannot be compelled to try his case on affidavits without the benefit of cross-examination").

The same is true for FINRA's in-house proceedings, used in pursuit of the same goal "to combat securities fraud and increase market transparency." *Id.* at 2125 (majority op.). Whether an agency enforcement mechanism is or is not authorized by an act of Congress, if the means and ends were pursued in court at common law, the means and ends must proceed in court under the Seventh Amendment. *Cf. Jarkesy*, 144 S. Ct. at 2128 ("When the English began evading American juries by siphoning adjudications to juryless admiralty, vice admiralty, and chancery courts, Americans condemned Parliament for 'subvert[ing] the rights and liberties of the colonists.' … And when the English continued to try Americans without juries, the Founders cited the practice as a justification for severing our ties to England.") (citations omitted).

Thus, it is respectfully asserted, for purposes of this motion seeking temporary injunctive relief pending adjudication of the merits of Mr. Lukezic's claims against Defendants, that this Court grant temporary and preliminary injunctive relief to Mr. Lukezic.

Although, it is true that "Congress may substitute an alternative review scheme" and "Congress did so" with respect to review of administrative agency action in the Exchange Act. *Axon Enter. v. FTC*, 598 U.S. 175, 176 (2023). "The creation of such review scheme divests district courts of their ordinary jurisdiction over challenges to [administrative actions]." *Id.* The Supreme Court has unequivocally determined that "[t]he Constitution prevents Congress from withdrawing from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law." *Jarkesy*, 144 S. Ct. at 2131 (quoting *Murray's Lessee v. Hoboken Land Improv. Co.*, 59 U.S. (18 How.) 272, 284 (1855)). Thus, *Jarkesy* very pointedly  bars the "special statutory review

scheme" of the type at issue here, which authorizes the "use of in-house hearings to seek civil penalties violates the Seventh Amendment right to a jury trial." *Id.* at 2139–2140 (Gorsuch, J., concurring). Because, at common law, "only courts of law issued monetary penalties to 'punish culpable individuals,'" the Supreme Court has repeatedly—and now recently—"recognized that 'civil penalties are a type of remedy at common law that could only be enforced in courts of law.'" *Id.* at 2129 (majority op.) (quoting *Tull v. United States*, 481 U.S. 412, 422 (1987)).

By contrast, in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), a pre-enforcement challenge by a mine operator to new employer safety regulations was *properly* directed to a first-instance decision by the agency. Whereas, the Supreme Court more recently ruled in *Jarkesy* that, as a matter of law, Congress's authorization of the use of in-house hearings to seek enforcement via civil penalties was ruled *improper*, because it violates the Seventh Amendment right to a jury trial. *Thunder Basin* is therefore inapposite here. *See also Jarkesy*, 144 S. Ct. at 2136–2137 ("Because the public rights exception as construed in *Atlas Roofing*[, 430 U.S. 442,] does not extend to these civil penalty suits for fraud, that case does not control.").

Congress's act divesting district courts of jurisdiction over FINRA's use of in-house hearings to seek monetary sanctions was **improper**, just as the Supreme Court ruled in *Jarkesy* regarding the same practice by the SEC. *Jarkesy*, 144 S. Ct. at 2124. Mr. Lukezic respectfully submits in this motion that Congress's authorization of seeking monetary penalties through non-Article III adjudication by FINRA under 15 U.S.C. § 78*o*-3(b)(7) was **improper**. Under Jarkesy's rejection of the parallel enforcement scheme by the SEC under 15 U.S.C. § 78u-2, FINRA's enforcement scheme under § 78*o*-3(b) will similarly fall.

The *Jarkesy* Court conducted a robust analysis and pointed to abundant support for the bases on which various sections of the Exchange Act purporting to govern enforcement were ruled

unconstitutional. By following *Jarkesy's* clearly defined path, Mr. Lukezic is likely to prevail in arguing that, just as Congress's authorization of the SEC's use of in-house hearings to seek civil penalties in 15 U.S.C. § 78u-2[21] violates the Seventh Amendment right to a jury trial, so does Congress's authorization of FINRA's use of in-house hearings to seek monetary sanctions in 15 U.S.C. § 78*o*-3. These laws providing for in-house hearings and monetary penalties and enforcement, although Acts of Congress, are in a word, "repugnant to the Constitution." *Marbury v. Madision*, 5 U.S. (1 Cranch) 137, 180 (1803).

## B. FINRA's Proceedings Violate Article II's Nondelegation Doctrine

The D.C. Circuit has long since recognized the SEC's role in the enforcement process. FINRA "has been delegated governmental power . . . to enforce . . . the legal requirements laid down in the Exchange Act," and "[t]he authority [FINRA] exercises in this realm . . . ultimately belongs to the SEC." *NASD v. SEC*, 431 F.3d 803, 804, 811 (D.C. Cir. 2005). FINRA is the "first-level adjudicator" for the SEC when executing its enforcement actions that "essentially supplant[] a disciplinary action that might otherwise start with a hearing before an ALJ." *Id.*, 805, 806. "The [Exchange Act] gave [FINRA] authority to discipline its member for violation of federal securities law, but this authority is *entirely* derivative." (emphasis original) *Id.*, 806. FINRA has "no authority to regulate independently of the SEC's control." *Id.*, 807, 811; (citing S. REP. NO. 94-75, at 23 (1975), as reprinted in 1975 U.S.C.C.A.N. 179, 201).

The D.C. Circuit previously held that enforcement actions by a challenged SRO were "government actions of the purest sort," in part because membership thereof was "a government-

---

[21] 15 U.S.C. § 78u-2(a)(1) ("Civil Remedies in Administrative Proceedings—In any proceeding . . . against any person, the [SEC] . . . **may impose a civil penalty** if it finds . . . that such penalty is in the public interest and that **such person has willfully violated** any provision of the Securities Act of 1933, the Investment Company Act of 1940, the Investment Advisers Act of 1940, or **this chapter, or the rules and regulations thereunder** . . . ."). (citations omitted) (emphasis added).

enforced condition to any participation in a municipal securities career." *Blount v. SEC*, 61 F.3d 938, 941 (D.C. Cir. 1995); see FN17 (noting the *Blount* court's reasoning was not influenced by the fact that the MSRB was created by Congress). In further support of the notion that where "the State bore an affirmative obligation [and] delegated that function to [a private party,]" the private party's actions were fairly attributable to the State for purposes of § 1983. *West v. Atkins*, 487 U.S. 42, 49, 56 (1988). The immediate matter comports with the reasoning in *West*. The President "shall take Care that the Laws [of the United States] be faithfully executed[.]" U.S. CONST. art II, § 3. With respect to enforcement of securities laws, the President delegated that power to the SEC, which thereby instructed FINRA to perform the SEC's enforcement functions. The SEC's delegation was accompanied by the congressional mandate that FINRA enforce its rules and federal law, or face SEC sanctions. 15 U.S.C. § 78s(g)(1), (h)(1).

### C.  FINRA's Disciplinary Proceedings Violate Due Process

The Due Process clause of the Fifth Amendment guarantees that no person shall be deprived of life, liberty, or property, without due process of law. Acting in concert, Defendants deny any semblance of due process to those prosecuted by FINRA and ensure that meaningful judicial review is an impossibility.

The existing statutory review scheme indicates that a decision rendered in an OHO disciplinary proceeding may be appealed to FINRA's National Adjudicatory Counsel ("NAC"), within 25 days following service of the decision.[22] The NAC performs a *de novo* review of the official record that was unilaterally shaped at the whim of the Hearing Officer,[23] and issues a

---

[22] FINRA Rule 1015(a)

[23] See, FINRA Rules 9136, 9147, 9150, 9235, 9251-53, 9263, 9267-68, 9280, and 9285 generally give the FINRA hearing officer, an employee of FINRA, complete autonomy and discretion to, *inter alia*: (a) strike anything from the pleadings or hearing transcripts; (b) make findings/determinations of facts that limit evidence, testimony, and arguments; (c) exclude an attorney for a party; (d) deny requests for documents or information on subjective grounds; and

written appellate decision that "may affirm, modify, or reverse" the OHO decision being reviewed.[24] Upon receipt of an NAC appellate decision containing an imposition of a disciplinary sanction, the individual subject to the sanction has a statutory right to move for review "by [the] appropriate regulatory agency."[25] The appropriate regulatory agency that is statutorily obligated to review a "final disciplinary sanction" imposed by FINRA is the SEC.[26] The official record provided to the SEC for consideration in its obligatory review "may consist solely of consideration of the record before [OHO] and for the presentation of supporting reasons to affirm, modify, or set aside the sanction[.]"[27] That creates a distinct problem, with respect to the Supreme Court's holding in *Jarkesy*, because the Supreme Court established that claims at common law cannot be adjudicated by the SEC through the use of in-house hearings. Accordingly, it is established that Defendant's claims against Mr. Lukezic, sounding in common law claims of tort and perjury, belong in an Article III court before a jury—whether in the OHO proceeding, or on appeal to the SEC.

The futility of applying the exhaustion of administrative remedies doctrine to Mr. Lukezic's situation is highlighted by several factors. First and foremost, despite the unequivocal constitutional mandate created by *Jarkesy*, FINRA is not authorized to prosecute brokers in Article III courts.

---

(e) exclude evidence if not *materially* exculpatory—as determined unilaterally by the hearing officer.

[24] FINRA Rule 1015(j)(1).

[25] 15 U.S.C. § 78s(d)

[26] The obligation requires that the aggrieved must file his motion seeking review under 15 U.S.C. § 78s(d) within thirty days after the date notice of the final regulatory action was issued. *Id.*, at (2).

[27] 15 U.S.C. § 78s(e)(1); *Id.*, (f) (in relationship to denials, suspensions, or bars of membership, dictates that the record to be reviewed by the SEC "may consist solely of consideration of the record before [OHO] and opportunity for the presentation of supporting reasons to dismiss . . . set aside[.]").

Second, the statutory judicial review scheme, as it exists today, ensures that the official record to which such review is limited is curated entirely by a single, unaccountable, unremovable, individual employed by the same private corporation that employs those that perform the investigative, intermediate appellate, and enforcement functions of Mr. Lukezic's disciplinary proceedings. The very same *official record* that follows the case from FINRA to the SEC, and ultimately to the Circuit Court, is certified by the SEC pursuant to 5 U.S.C. § 557, absent any prior affirmative verification by the SEC that the Hearing Officer dutifully fulfilled his obligations in accordance with the Exchange Act and FINRA Rule 9267. The inappropriateness of this passive acceptance by the SEC is amplified by the glaring conflict arising from the Hearing Officer's duty of loyalty to FINRA as its employee, as well as the fact that monetary sanctions awarded by the Hearing Officer are paid to FINRA, her employer. To say nothing of the fact that the Hearing Officer has not undertaken the oath to support the Constitution that is undertaken by all at the SEC—including the SEC employee who certifies the completeness of the Hearing Officer's official record that is sent to the District court.[28]

Compounding the futility of applying the exhaustion of administrative remedies doctrine to Mr. Lukezic's situation is the fact that the constitutional mandate in *Jarkesy* requires that those charged with claims that "resemble[] common law causes of action" be afforded a ***jury*** trial in an Article III court—notwithstanding, the existing statutory review scheme renders the possibility of a ***jury*** deciding the facts in FINRA's prosecution entirely impossible—absent this Court issuing an Order requiring FINRA to bring its claims against Mr. Lukezic in an Article III court. *Jarkesy*, 144 S. Ct. 2122. As depicted *supra*, the current statutory review scheme is limited to requiring a

---

[28] 17 CFR 200.54 Members of the SEC have undertaken an oath to support the Constitution and carefully guard against any infringement of the constitutional rights of those subject to regulation by the SEC.

*de novo* review by an Article III court and lacks any mechanism through which a ***jury*** impaneled by an Article III court decides issues of fact.

*Ad arguendo*, even if a U.S. Circuit Court were to remand FINRA's claims against Mr. Lukezic to an Article III court for a jury trial, not only would it be the first time that a Circuit court's review of an SEC action afforded the aggrieved his Seventh Amendment right to a jury trial before an Article III court, but it would take years.[29]

To say nothing of the inordinate amount of time and money wasted by everyone involved in the multi-year process, Mr. Lukezic's ability to obtain exculpatory evidence from those outside of FINRA's limited jurisdiction through subpoena would be stifled by the spoliation of such evidence through routine document destruction practices of the custodians.

In aggregate, Defendants have put in place a series of rules and regulations that allow the SEC to hide behind its own ignorance, while FINRA executes what is arguably the largest massacre of due process rights among financial professionals in history. Adding insult to injury, FINRA has successfully shielded itself from all forms of accountability with (1) congressional authorization that is in direct conflict with the constitutional mandate of the Supreme Court in *Jarkesy*, and (2) a statutory process through which meaningful judicial review cannot—and never could—be obtained.

## II.    PLAINTIFF WILL SUFFER IRREPARABLE HARM, ABSENT INJUNCTIVE RELIEF

The Supreme Court has long recognized that "a violation of constitutional rights constitutes . . . irreparable harm per se." *District of Columbia v. Eastern Trans-Waste of Md., Inc.*, 758 A.2d 1, 15 (D.C. 2000); *see also Elrod v. Burns*, 427 U.S. 347, 373 (1976) (stating the loss of

---

[29] FINRA Disciplinary Proceeding No. 2014039285401 (showing that the subject of FINRA's disciplinary proceeding was ineligible for judicial review until he exhausted his administrative remedies, which took **eight years** from the date that FINRA initiated the OHO action).

constitutional rights "for even minimal periods of time, unquestionably constitutes irreparable injury"). Here, Mr. Lukezic faces not one, but multiple, constitutional deprivations that warrant immediate injunctive relief.

First, FINRA's administrative proceeding deprives Mr. Lukezic of his Seventh Amendment right to a jury trial—a right the Supreme Court has acknowledged as "the great bulwark of our civil and political liberties." *Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000) (internal quotation marks omitted); *see also Miller v. United States*, 209 A.3d 75 (D.C. 2019). This fundamental right cannot be abrogated in this context, as the Supreme Court explicitly held in *Jarkesy*. Denial of Mr. Lukezic's right to a jury trial constitutes irreparable harm, deprivation of the right to a jury and the protections associated with an Article III adjudication is constitutional injury cannot be undone. No subsequent remedy can restore Mr. Lukezic's fundamental right to have his peers, rather than a biased FINRA employee, determine the merits of the serious allegations lodged against him.

Second, FINRA's administrative proceeding inflicts severe due process violations that courts have recognized as independently sufficient to establish irreparable harm. The gross deficiencies in FINRA's adjudicative process—including the limited discovery rights, compromised adjudicator independence, and restricted appeal rights—cannot be adequately remedied after the fact. See §§ I(A), (C), FN19, *supra*. As the Supreme Court recognized in *Gibson v. Berryhill*, requiring a party to submit to such a process, where inherent bias in the decision-making process exists, would "effectively deprive [Plaintiffs] of their property, that is, their right to practice their professions, without due process of law and that irreparable injury would follow in the normal course of events." 411 U.S. 564, 571-72 (1973) (quoting 331 F. Supp. 122, 126 (M.D. Ala. 1971).

Lastly, Mr. Lukezic faces severe economic consequences as a result of FINRA's allegations. While economic loss alone typically does not constitute irreparable harm, courts recognize an exception, where "the loss threatens the very existence of the movant's business." *District of Columbia v. Group Ins. Admin.*, 633 A.2d 2, 23 (D.C. 1993) (quoting *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). Here, FINRA's actions pose an existential threat to Mr. Lukezic's business for several reasons. Most critically, as a broker, Mr. Lukezic's business depends entirely on his ability to maintain his registration with FINRA—the only available SRO for securities brokers. FINRA's public disclosure of unproven and false allegations on BrokerCheck effectively serves as a de facto bar from the industry. Because Defendants mandate that all firms and individuals include a link to BrokerCheck.org on their professional webpages, it is no surprise that every current client, potential client, and business partner quickly discovers the defamatory allegations.[30] Additionally, FINRA's immediate publication of these false allegations on its website has already irreparably destroyed a substantial number of Mr. Lukezic's client relationships and prevented the formation of new ones—as no reasonable investor would entrust their investments to a broker facing the threat being ousted from the industry by Defendants.[31] Furthermore, Mr. Lukezic's ability to maintain essential business relationships with clearing firms, custodians, and other industry partners is severely compromised by FINRA's public allegations, as these entities customarily terminate relationships with brokers facing disciplinary

---

[30] *See* FINRA Rule 2210

[31] FINRA Sanction Guidelines (March 2024), p. 122 (regarding unauthorized transactions guides FINRA's hearing officers to "**strongly consider barring the respondent** [ ] [w]here aggravating factors predominate." Such "aggravating factors" include "[p]roviding a [p]atrial but [i]ncomplete [r]esponse . . . [p]ursuant to FINRA Rule 8210.") (Emphasis added) (id. p. 93); Id. at p. 116 (directing FINRA hearing officers reviewing charges of "[f]raud, [misrepresentations, or [o]missions of [m]aterial [f]act [to] **[s]trongly consider barring the respondent**.") (Emphasis added).

17

action to avoid perceived regulatory risk. The combined effect of these factors threatens not just Mr. Lukezic's income, but the very existence of his securities business with Old Slip. Such industry-wide blackballing constitutes irreparable harm.

## III.    THE BALANCE OF EQUITIES FAVORS PLAINTIFF

The balance of equities decisively favors granting injunctive relief. While Mr. Lukezic faces irreparable constitutional injury and professional devastation, FINRA would suffer no meaningful harm from a pause in its administrative proceedings.

Most significantly, any claimed urgency by FINRA rings hollow, given its protracted investigation timeline into Mr. Lukezic. FINRA initiated its inquiry into Mr. Lukezic over three years ago, in December 2021 (Matter No. 20210704082), followed by multiple subsequent investigations under different matter numbers panning various FINRA offices across the United States. Despite this extensive, nationwide investigation, FIRNA did not file its formal disciplinary complaint until December 17, 2024. Notably, notwithstanding having the authority to do so under Rule 9810(a)(1), FINRA never sought a temporary cease and desist order—belying any suggestion that Mr. Lukezic poses an immediate threat requiring urgent action. This deliberate, years-long pace in bringing these charges against Mr. Lukezic fundamentally undermines any assertion that temporary injunctive relief would prejudice FINRA's regulatory mission.

Additionally, Defendants retain ample authority to pursue their regulatory objectives through constitutionally-permissible means, and the severe power imbalance between the parties strongly favors injunctive relief. The injunction would merely require FINRA to respect Mr. Lukezic's constitutional rights—not to abandon its enforcement role. FINRA and the SEC, with their vast resources, face merely procedural inconvenience in having to prosecute Mr. Lukezic before a jury in an Article III court. However, Defendants' convenience cannot outweigh fundamental constitutional protections. *See Stanley v. Illinois*, 405 U.S. 645, 656 (1972) (noting

that administrative convenience is insufficient to justify constitutional violations). In contrast, Mr. Lukezic is faced with the complete and final destruction of his career and the disregard of his constitutional rights. Such asymmetry in the harm each party faces favors granting injunctive relief.

Finally, the preliminary nature of the requested relief weighs in Plaintiff's favor. The injunction would merely preserve the status quo while the Court considers the serious constitutional questions presented by Mr. Lukezic. "An order maintaining the status quo may be appropriate where a serious legal question is presented, where the movant will otherwise suffer irreparable injury, and when there is little risk of harm to the other parties or to the public interest." *Walter E. Lynch Co., Inc. v. Fuisz*, 862 A.2d 929, 932 (D.C. 2004). Here, all of these factors align in favor of temporary injunctive relief to prevent irreparable constitutional injury to Mr. Lukezic.

## IV.  AN INJUNCTION SERVES THE PUBLIC INTERESTS

### A.  Enjoining the Publication of Defamatory Information Greatly Serves Public Interests.

The public has a strong interest in (1) protecting every citizen's right to trial by an impartial jury, and (2) ensuring that regulatory enforcement actions comply with constitutional protections. Enjoining the continuous republication of patently false and defamatory allegations by FINRA and unconstitutional disciplinary proceeding will *not only* uphold fundamental constitutional rights— it will *also* prevent the erosion of procedural protections for individuals subject to FINRA's unlawful administrative enforcement actions.

Defendants continue to work in concert to make certain that Plaintiff's right to be tried before a jury in an Article III court never materializes. As far as Defendants are concerned, they need not be bothered with constitutional rights, nor the Supreme Court mandate of *Jarkesy*. To that end, Defendants' overwhelming rejection of the rights of individuals prompted them to

weaponize the popularity and convenience of a simple Google® search. Like all targets of FINRA disciplinary actions, Plaintiff has become the subject of substantial ridicule stemming entirely from Defendants' premature publication[32] of unsubstantiated, false, and defamatory allegations on the BrokerCheck.org website. Given the millions of dollars spent promoting it and Defendants' mandate that all members link to it on their websites,[33] anyone that performs a Google® search for Plaintiff by name sees a link to Plaintiff's individual BrokerCheck profile page as the very first result. As intended by Defendants, the first and most-often-visited search result is the page upon which Defendants published the defamatory allegations—thereby inflicting the most possible personal and professional harm possible.

Even if Defendants' allegations against Plaintiff were true—and they are not—Defendants' publication thereof brings to mind the words of the Honorable Justice Black, "The very word 'trial' connotes decisions on the evidence and arguments properly advanced in an open court. Legal trials are not like elections, to be won through the use of the meeting-hall, the radio, and the newspaper." *Bridges v. California*, 62 S. Ct. 190, 197 (1941). Although performing a cursory web search to familiarize oneself with a new name or idea had not yet become the norm in 1941, it stands to reason that Justice Black may have referenced it in *Bridges* if it were decided today. Enjoining Defendants' overt and persistent acts to besmirch Plaintiff's reputation serves an essential public interest of putting an end to Defendants' deprivation of the constitutional rights afforded to all citizens.

---

[32] *See* Securities Exchange Act Release No. 62476 (July 8, 2010), 75 FR 41254 (July 15, 2010) (Order Approving File No. SR-FINRA-2010-012)
[33] FINRA Regulatory Notice 15-50; FINRA Rule 2210.

### B. The preservation of Enumerated Constitutional Rights Serves Public Interests.

The Supreme Court has emphasized that the executive branch serves public interests through effective decision-making. *United States v. Nixon*, 418 U.S. 683 (1974) (equating the expected degree of confidentiality prescribed to Presidential communications with "judicial deliberations," the Court also assigns to Presidential communications the "necessity for protection of the public interest in . . . Presidential decision making [*sic*]." ) *Id.* at 708. In conjunction with *Trump v. United States*, 603 U.S. 593 (2024) (decided on the longstanding presumption that in discharging the duties of his office, the President serves the interests of the public.) (*Id.* at 611-12), the Supreme Court underscores the judiciary's recognition that Presidential actions, including executive orders, are designed to serve the public interest by facilitating effective and uninhibited executive decision-making.

Just last week, the President issued Executive Order No. 14219, 50 Fed. Reg. 10583 (February 19, 2025). Therein, the President unequivocally called out the very same phenomena that Plaintiff brings before this Court. Namely, the existing regulatory scheme contains certain regulations authorized by unconstitutional statutes. The President did so by stating the urgent need to assess existing regulations to ensure that the expenditure of resources is focused "on regulations squarely authorized by **constitutional** Federal statutes, and to commence deconstruction of the overbearing and burdensome administrative state. Ending Federal overreach and **restoring constitutional separation of powers**." (emphasis added) *Id.*, § 1. The President proceeds to mandate that "Agency heads [including Mark T. Uydea, Acting Chairman of the SEC], in coordination with [DOGE], initiate a process to review all regulations . . . for consistency with law and Administration policy [and to] identify the following classes of regulations: (i) **unconstitutional regulations** and **regulations that raise serious constitutional difficulties**, such as **exceeding the scope of the power vested** in the Federal Government **by the Constitution**; (ii)

regulations that are based on **unlawful delegations of legislative power**; *et cetera*." (emphasis added) *Id.*, §2(a), *et seq.*

It would exceed the realm of conscionability to subscribe to the notion that the public interest served by an expeditious adjudication, notwithstanding its decimation of enumerated constitutional rights and unlawful exercise of executive authority, outweighs the public interest served by a delayed but lawful adjudication. In the immediate matter, FINRA has produced a plethora of evidence (including notes taken by FINRA staff members) revealing that not a single individual purports to have suffered any pecuniary or other harm as a result of Plaintiff's alleged misconduct.[34] Furthermore and despite authorization, FINRA did not initiate a proceeding against Plaintiff under Rule 9810(a), seeking "a temporary cease and desist proceeding with respect to alleged violations of . . . FINRA Rule 2010 [and] unauthorized trading." *Id.* Were there concerns that Plaintiff may pose an ongoing risk to the investing public, a temporary cease and desist would be the appropriate action.

## CONCLUSION

For the reasons set forth above, this Court should grant Mr. Lukezic's motion for a temporary restraining order and preliminary injunction. FINRA's attempt to prosecute Mr. Lukezic through its in-house tribunal violates his Seventh Amendment right to a jury trial, contravenes Article II's nondelegation doctrine, deprives him of his due process rights under the Fifth Amendment, and impedes his Sixth Amendment right to an impartial jury. Without immediate injunctive relief as FINRA continues to publish the unfounded and false allegations to its

---

[34] Contra FDC ¶ 20 (FINRA explicitly alleges that Mr. Lukezic's conduct "caused losses of approximately $44,500 [ ] in five customers' accounts" identified in Exhibit 5); *cf.* Exhibits 6-9 (Memorandums of interviews taken by FINRA with each of the five customers indicated that none alleged losses of money or anything of value as a result of Lukezic's alleged misconduct).

BrokerCheck.org website, Mr. Lukezic faces irreparable harm—not only in the form of these constitutional injuries, but also through the destruction of his securities business that he painstakingly built over several decades. The balance of equities strongly favors preserving Mr. Lukezic's constitutional rights over Defendants' administrative convenience, and granting injunctive relief serves the public interest by preventing the obliteration of fundamental constitutional protections in regulatory enforcement actions such as the one Mr. Lukezic faces.


Dated: March 3, 2025                          **HLBS LAW**

                                              */s/ Dochtor D. Kennedy*
                                              Dochtor D. Kennedy, MBA, J.D.
                                              Attorney for Plaintiff
                                              *Pro hac admission pending*
                                              Of Counsel at HLBS Law
                                              390 Interlocken Crescent, Suite 350
                                              Broomfield, CO 80021
                                              (720) 282-5154
                                              doc.kennedy@hlbslaw.com


Dated: March 3, 2025                          **HOLLAND & KNIGHT LLP**

                                              */s/ Stuart G. Nash*
                                              Stuart G. Nash, Bar No. 444058
                                              HOLLAND & KNIGHT LLP
                                              800 17th Street N.W., Suite 1100
                                              Washington, D.C. 20006
                                              Telephone: (202) 469-5158
                                              Fax: (202) 955-5564
                                              stuart.nash@hklaw.com

                                              *Co-Counsel for Plaintiff*