## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JAMES J. LUKEZIC,

                *Plaintiff*,

      v.

FINANCIAL INDUSTRY REGULATORY
AUTHORITY, INC., *et al.*,

              *Defendants*.

Case No. 1:25-cv-00623-DLF

## DEFENDANT SECURITIES AND EXCHANGE COMMISSION'S AND DEFENDANT DAVID SALTIEL IN HIS OFFICIAL CAPACITY'S COMBINED MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND IN SUPPORT OF THEIR MOTION TO DISMISS

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

LESLEY FARBY
Deputy Director
Federal Programs Branch

CHRISTOPHER HALL
Assistant Branch Director
Federal Programs Branch

STEPHEN M. PEZZI (D.C. Bar No. 995500)
 Senior Trial Counsel
TAYLOR PITZ
 Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch

*Counsel for the SEC and for David Saltiel in his Official Capacity as Acting Director of the Division of Trading and Markets at the SEC*

**TABLE OF CONTENTS**

**INTRODUCTION** ..................................................................................................... **1**

**BACKGROUND** ...................................................................................................... **2**

I.    Statutory Background ...................................................................................... 2

II.   Facts and Prior Proceedings ........................................................................... 5

**ARGUMENT** .......................................................................................................... **7**

I.    **PLAINTIFF'S SEVENTH AMENDMENT AND DUE PROCESS CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION.** ................................................................................................ **8**

II.   **PLAINTIFF'S PRELIMINARY-INJUNCTION MOTION SHOULD BE DENIED.** ................................................................................................ **17**

      a.    Plaintiff cannot demonstrate irreparable harm. ..................................... 18

      b.    Plaintiff is unlikely to succeed on the merits. ....................................... 21

            i.    Plaintiff's private-nondelegation claim is unlikely to succeed on the merits. ........................................................................................ 22

            ii.   Plaintiff's Seventh Amendment and Due Process Clause claims are unlikely to succeed on the merits. ............................................ 26

      c.    The balance of equities and the public interest disfavor injunctive relief. ........... 26

III.  **PLAINTIFF'S PRIVATE-NONDELEGATION CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.** ................................ **28**

**CONCLUSION** ....................................................................................................... **28**

# TABLE OF AUTHORITIES

**Cases**

*Air Transp. Ass'n of Am. v. Exp.-Imp. Bank of the U.S.*,
　840 F. Supp. 2d 327 (D.D.C. 2012) .............................................................. 19-20, 20

*Alpine Sec. Corp. v. FINRA*,
　121 F.4th 1314 (D.C. Cir. 2024), *stay denied*, No. 24-808 (U.S. Mar. 14, 2025), *pet. docketed*,
　No. 24-904 (U.S. Feb. 24, 2025) ...................................................................... *passim*

*Alpine Sec. Corp. v. Nat'l Sec. Clearing Corp.*,
　No. 23-cv-782, 2024 WL 1011863 (D. Utah Mar. 8, 2024) ................................... 16

*Alpine Sec. Corp. v. Nat'l Sec. Clearing Corp.*,
　No. 23-cv-782, 2025 WL 901847 (D. Utah Mar. 25, 2025) ............................. 17, 25

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
　526 U.S. 40 (1999) ......................................................................................... 16

*Aslin v. FINRA*,
　704 F.3d 475 (7th Cir. 2013) ............................................................................ 24

*Axon Enter., Inc. v. FTC*,
　598 U.S. 175, 180 (2023) ........................................................................... *passim*

*Barkley v. U.S. Marshals Serv. ex rel. Hylton*,
　766 F.3d 25 (D.C. Cir. 2014) ............................................................................ 11

*Belton v. Hatch*,
　17 N.E. 225 (N.Y. 1888) .................................................................................... 3

*Black v. SEC*,
　125 F.4th 541 (4th Cir. 2025) .................................................................... 14, 19

*Blankenship v. FINRA*,
　24-cv-3003, 2024 WL 4043442 (E.D. Pa. Sept. 4, 2024), *appeal docketed*, No. 24-2860 (3d
　Cir. Oct. 4, 2024) ................................................................................. 12-13, 14, 17

*Carter v. Carter Coal Co.*,
　298 U.S. 238 (1936) ........................................................................................ 23

*Chaplaincy of Full Gospel Churches v. England*,
　454 F.3d 290 (D.C. Cir. 2006) ......................................................................... 18

*Curtis v. Loether*,
　415 U.S. 189 (1974) ........................................................................... 10, 13, 15

*District of Columbia v. Eastern Trans-Waste of Md., Inc.*,
   758 A.2d 1 (D.C. 2000) ................................................................. 18

*District of Columbia v. Grp. Ins. Admin.*,
   633 A.2d 2 (D.C. 1993) ................................................................. 20

*Elgin v. Dep't of the Treasury*,
   567 U.S. 1 (2012) ............................................................. 11, 13, 14

*Elrod v. Burns*,
   427 U.S. 347 (1976) ..................................................................... 18

*English v. District of Columbia*,
   717 F.3d 968 (D.C. Cir. 2013) ...................................................... 11

*Eubank v. City of Richmond*,
   226 U.S. 137 (1912) ..................................................................... 22

*Express Scripts, Inc. v. FTC*,
   No. 24-cv-01549, 2025 WL 521812 (E.D. Mo. Feb. 18, 2025) ............... 17

*First Jersey Sec., Inc. v. Bergen*,
   605 F.2d 690 (3d Cir. 1979) .................................................... 10, 24

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
   561 U.S. 477 (2010) .............................................................. 10, 12

*Granfinanciera, S.A. v. Nordberg*,
   492 U.S. 33 (1989) ....................................................................... 10

*Guedes v. ATF*,
   920 F.3d 1 (D.C. Cir. 2019) .......................................................... 17

*Gundy v. United States*,
   588 U.S. 128 (2019) ..................................................................... 22

*In re NYSE Specialists Sec. Litig.*,
   503 F.3d 89 (2d Cir. 2007) ............................................................ 24

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware*,
   414 U.S. 117 (1973) ....................................................................... 3

*Munaf v. Geren*,
   553 U.S. 674 (2008) ..................................................................... 26

*Nat'l Ass'n of Sec. Dealers v. SEC*,
   431 F.3d 803 (D.C. Cir. 2005) ................................................. 5, 9, 14

*Nat'l Council of Nonprofits v. OMB*,
  25-cv-239 (LLA), 2025 WL 314433 (D.D.C. Jan. 28, 2025) ................................... 17

*Nat'l Mining Ass'n v. Jackson*,
  768 F. Supp. 2d 34 (D.D.C. 2011) .......................................................................... 20

*Nat'l Treasury Emps. Union v. Trump*,
  No. 25-cv-420 (CRC), 2025 WL 561080 (D.D.C. Feb. 20, 2025) .......................... 15

*Nexstar Media, Inc. Grp. v. NLRB*,
  746 F. Supp. 3d 464 (N.D. Ohio 2024) ................................................................... 17

*Nken v. Holder*,
  556 U.S. 418 (2009) ................................................................................................ 26

*Novartis Pharms. Corp. v. Becerra*,
  No. 24-cv-02234 (DLF), 2024 WL 3823270 (D.D.C. Aug. 13, 2024) .............. 20, 21

*Oklahoma v. United States*,
  62 F.4th 221 (6th Cir. 2023), cert. denied, 144 S. Ct. 2679 (2024) ......... 1, 22, 24, 28

*Open Top Sightseeing USA v. Mr. Sightseeing, LLC*,
  48 F. Supp. 3d 87 (D.D.C. 2014) ...................................................................... 17, 21

*Pub. Citizen Health Rsch. Grp. v. Acosta*,
  363 F. Supp. 3d 1 (D.D.C. 2018) ............................................................................ 17

*R.H. Johnson & Co. v. SEC*,
  198 F.2d 690 (2d Cir. 1952) .................................................................................... 24

*Reno v. Catholic Soc. Servs., Inc.*,
  509 U.S. 43 (1993) .................................................................................................. 12

*Saad v. SEC*,
  980 F.3d 103 (D.C Cir. 2020) ................................................................................... 1

*Scottsdale Cap. Advisors Corp. v. FINRA*,
  811 F. App'x 667 (D.C. Cir. 2020) .......................................................................... 10

*Scottsdale Cap. Advisors Corp. v. FINRA*,
  844 F.3d 414 (4th Cir. 2016) ................................................................................... 10

*SEC v. Jarkesy*,
  603 U.S. 109 (2024) ......................................................................................... *passim*

*Silver v. New York Stock Exch.*,
  373 U.S. 341 (1963) .................................................................................................. 3

*Smith v. FINRA*,
 25-cv-447 (JEB), 2025 WL 985447 (D.D.C. Apr. 2, 2025) .................................................. 19

*Sorrell v. SEC*,
 679 F.2d 1323 (9th Cir. 1982) ........................................................................................... 24

*Springsteen-Abbott v. SEC*,
 989 F.3d 4 (D.C. Cir. 2021) ............................................................................................... 14

*Sunshine Anthracite Coal Co. v. Adkins*,
 310 U.S. 381 (1940) ..................................................................................................... *passim*

*Thomas Cusack Co. v. City of Chicago*,
 242 U.S. 526 (1917) .......................................................................................................... 22

*Thunder Basin Coal Co. v. Reich*,
 510 U.S. 200 (1994) ..................................................................................................... *passim*

*Todd & Co. v. SEC*,
 557 F.2d 1008 (3d Cir. 1977) ............................................................................................ 24

*Turbeville v. FINRA*,
 874 F.3d 1268 (11th Cir. 2017) ......................................................................................... 27

*United States v. Nat'l Ass'n of Sec. Dealers*,
 422 U.S. 694 (1975) ............................................................................................................ 4

*Univ. of Cal. Student Ass'n v. Carter*,
 No. 25-cv-354 (RDM), 2025 WL 542586 (D.D.C. Feb. 17, 2025) ................................... 18, 21

*Vape Cent. Grp., LLC v. FDA*,
 Civ. No. 24-3354 (RDM), 2025 WL 637416 (D.D.C. Feb. 27, 2025) ................................... 17

*VHS Acquisition Subsidiary No. 7 v. NLRB*,
 No. 1:24-cv-02577 (TNM), 2024 WL 4817175 (D.D.C. Nov. 17, 2024) ............................... 17

*Washington ex rel. Seattle Title Tr. Co. v. Roberge*,
 278 U.S. 116 (1928) ...................................................................................................... 22, 23

*Winter v. Nat. Res. Def. Council, Inc.*,
 555 U.S. 7 (2008) .......................................................................................................... 17, 18

*Wisconsin Gas Co. v. FERC*,
 758 F.2d 669 (D.C. Cir. 1985) ........................................................................................... 20

*YAPP USA Auto. Sys., Inc. v. NLRB*,
 No. 24-12173, 2024 WL 4119058 (E.D. Mich. Sept. 9, 2024), *appeal docketed*, No. 24-1754
 (6th Cir. Sept. 9, 2024) ...................................................................................................... 17

v

**Consititution**

U.S. Const. amend. V ........................................................................................ 11

U.S. Const. amend. VII ...................................................................................... 10

**Statutes**

15 U.S.C. § 78f(b)(7) ......................................................................................... 4

15 U.S.C. § 78o-3 .......................................................................................... 4, 27

15 U.S.C. § 78o ................................................................................................. 4

15 U.S.C. § 78s .......................................................................................... *passim*

15 U.S.C. § 78y(a) ................................................................................. 2, 5, 9, 11

28 U.S.C. § 1331 ............................................................................................... 9

**Rules**

Fed. R. Civ. P. 12(b)(1) ..................................................................................... 9

Fed. R. Civ. P. 12(b)(6) ................................................................................... 28

Fed. R. Civ. P. 12(h)(3) ..................................................................................... 9

**Administrative & Executive Materials**

17 C.F.R. § 201.401(d) ................................................................................. 5, 16

17 C.F.R. § 201.420(a)(1) ............................................................................... 4-5

17 C.F.R. § 240.19d-1(c)(1) .............................................................................. 4

17 C.F.R. § 240.19d-2 ....................................................................................... 5

17 C.F.R. § 240.19d-3 ..................................................................................... 4-5

*Charles L. Hill, Jr.*,
  Exchange Act Release No. 79459, 115 SEC Docket 4003, 2016 WL 7032731 (S.E.C. Dec. 2,
  2016) ............................................................................................................ 12

*Frank P. Quattrone*,
  Exchange Act Release No. 53547, 87 SEC Docket 1847, 2006 WL 768606 (S.E.C. Mar. 24,
  2006) ............................................................................................................ 12

*Mitchell M. Maynard & Dorice A. Maynard*,
    Investment Advisers Act Release No. 2875, 2009 WL 1362796, (S.E.C. May 15, 2009) ....... 12

**Other Authorities**

FINRA, *FINRA Rules*,
    https://www.finra.org/rulesguidance/rulebooks/finra-rules ...................................................... 5

FINRA Rule 1015 ............................................................................................................................ 6

FINRA Rule 2010 ............................................................................................................................ 5

FINRA Rule 2111 ............................................................................................................................ 5

FINRA Rule 4511 ............................................................................................................................ 5

FINRA Rule 8210 ............................................................................................................................ 5

FINRA Rule 8310 ............................................................................................................................ 6

FINRA Rule 9231 ............................................................................................................................ 6

FINRA Rule 9331 ............................................................................................................................ 6

FINRA Rule 9351 ............................................................................................................................ 6

FINRA Rule 9370(a) .................................................................................................................. 16, 19

OLD SLIP CAPITAL, Contact Us,
    https://www.oldslipcap.com/contact-us ...................................................................................... 21

SEC Historical Soc'y, *The Institution of Experience: Self-Regulatory Organizations in the
    Securities Industry, 1792-2010*,
    https://perma.cc/B7FV-N98H .................................................................................................. 2, 3

**INTRODUCTION**

The Financial Industry Regulatory Authority (FINRA) "is a non-profit corporation organized under the laws of Delaware," Compl. ¶ 8, ECF No. 2, and "a private self-regulatory organization," *Saad v. SEC*, 980 F.3d 103, 104 (D.C Cir. 2020), which "function[s] subordinately," *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 399 (1940), to the Securities and Exchange Commission (SEC) in overseeing securities markets. "In case after case, the courts have upheld this arrangement, reasoning that the SEC's ultimate control over the rules and their enforcement" is sufficient to satisfy constitutional requirements. *Oklahoma v. United States*, 62 F.4th 221, 229 (6th Cir. 2023) (Sutton, C.J.), *cert. denied*, 144 S. Ct. 2679 (2024); *see also id.* at 243 (Cole, J., concurring) (calling the relevant statutory provisions "unquestionably constitutional"). There is no basis to depart from that nationwide consensus here—which the D.C. Circuit itself has now endorsed, in all respects that are relevant to this case. *See Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314, 1319 (D.C. Cir. 2024), *stay denied*, No. 24-808 (U.S. Mar. 14, 2025); *pet. docketed*, No. 24-904 (U.S. Feb. 24, 2025).

To deny Plaintiffs' motion for a preliminary injunction, however, the Court need not resolve the merits of Plaintiff's claims against the government defendants. As this Court correctly recognized in denying a temporary restraining order—applying the same standard that now governs Plaintiff's preliminary-injunction motion—the D.C. Circuit's recent decision in *Alpine* is all-but-fatal to Plaintiff's theory of irreparable harm. "In general, an alleged constitutional defect in FINRA's exercise of enforcement authority is not a standalone basis for asserting an irreparable harm." Order at 2, ECF No. 11 (citing *Alpine*, 121 F.4th at 1332-33). And "[w]ithout a likely irreparable injury, [Plaintiff] has not shown that he is entitled to" a preliminary injunction. *Id.* at 3. What remains of Plaintiff's motion can now be denied on that very same basis, and for that reason alone—without the need to consider any of the other factors for injunctive relief.

In addition, two of Plaintiff's claims against the federal government—under the Seventh Amendment and the Due Process Clause of the Fifth Amendment—were filed at the wrong time, in the wrong federal court. Congress has provided for "exclusive" jurisdiction over those claims

in the United States Courts of Appeals, 15 U.S.C. § 78y(a)—only after FINRA's disciplinary proceeding has run its course, and after the SEC can conduct its own *de novo* review of any disciplinary order. The Supreme Court's recent decision in *Axon Enterprise, Inc. v. FTC* did not change that long-settled jurisdictional rule—in fact, it reaffirmed it, except with respect to certain "extraordinary" claims, which bear no similarity to Plaintiff's Seventh Amendment or due process claims here. 598 U.S. 175, 180 (2023). So, as for those two claims, the Court should not only deny Plaintiff's motion for a preliminary injunction, it should also dismiss them for lack of subject-matter jurisdiction.

FINRA and Mr. Lukezic seem to have very different views of the underlying facts. But this is not the appropriate forum (nor the appropriate time) to litigate that dispute. If, after a hearing, FINRA chooses to impose some form of discipline, and if the SEC chooses to affirm any such disciplinary order, Plaintiff will be free to seek review in the appropriate court of appeals— including *de novo* review of any constitutional claims that remain viable, depending on the outcome of the administrative proceedings. But as for this case, in this Court, at this time: this Court should deny Plaintiff's motion for a preliminary injunction, dismiss Plaintiff's Seventh Amendment and due process claims for lack of subject-matter jurisdiction, and dismiss Plaintiff's private-nondelegation claim for failure to state a claim.

## BACKGROUND

I.    **Statutory Background**

a.    Since the founding, securities professionals have organized among themselves and agreed to be governed by a self-imposed set of industry rules. *See Alpine*, 121 F.4th at 1319. As early as 1792, for example, New York brokers reportedly met under a buttonwood tree on Wall Street and pledged to deal with each other on specified terms. *See* SEC Historical Soc'y, *The Institution of Experience: Self-Regulatory Organizations in the Securities Industry, 1792-2010*, https://perma.cc/B7FV-N98H. In 1817, members of that group formed the New York Stock and Exchange Board, later renamed the New York Stock Exchange. *Id.* Members of the Exchange agreed to a constitution that established a set of "seventeen rules that governed trading" and

provided for internal disciplinary proceedings and sanctions ranging "from fines to suspension and expulsion" from the Exchange. *Id.*

For well over a century after these organizations were created, securities exchanges throughout the country operated as private "business club[s]" supervising the conduct of their own members. *Belton v. Hatch*, 17 N.E. 225, 226 (N.Y. 1888). The constitution of the New York Stock Exchange, for example, sought to protect its members' business interests by imposing restraints on "reckless or dishonest methods." *Id.* at 227. The Exchange's constitution lodged "the powers of [self-]government" in "a [self-]governing committee, whose decision, after the trial of a member for offenses under its laws, [wa]s final." *Id.*

**b.** In the first decades of the twentieth century, securities exchanges "became a more and more important element in our Nation's economic and financial system," and their "ungoverned self-regulation" became "more and more obviously inadequate, with acceleratingly grave consequences." *Silver v. New York Stock Exch.*, 373 U.S. 341, 351 (1963). After the 1929 stock market crash and Great Depression, Congress passed the Securities Exchange Act of 1934, which preserved "the traditional private governance of exchanges" while allowing "the Government to monitor exchange business in the public interest." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware*, 414 U.S. 117, 127-28 (1973).

To that end, the Exchange Act established the Securities and Exchange Commission, required all national stock exchanges to be registered with the Commission, and granted the Commission power to supervise exchange self-regulation by creating and amending the rules of the exchanges to protect the public. *Merrill Lynch*, 414 U.S. at 128-30. Congress thus left to the exchanges the "initiative and responsibility" for establishing their own rules and disciplining their own members, but the exchanges would be "subject to appropriate federal regulatory supervision or action." *Id.* at 130-31 (quotation marks omitted).

In 1938, Congress extended federally supervised self-regulation to private "national securities associations" of over-the-counter brokers and dealers, subjecting those private organizations to the same kind of "pervasive supervisory authority [of] the SEC" that the SEC

possessed over the stock exchanges. *United States v. Nat'l Ass'n of Sec. Dealers*, 422 U.S. 694, 700 n.6, 732-33 (1975).

    **c.**  Congress has "preserv[ed]" this self-regulatory system over the past century, while amending the securities laws on occasion to "increas[e] government oversight" in the public interest. *See Alpine*, 121 F.4th at 1321.

    Under the securities laws as they exist today, any broker or dealer who wishes to effect securities transactions must register with the SEC and become a member of a self-regulatory organization that is registered with the SEC: either a registered national securities exchange or a registered national securities association. *See* 15 U.S.C. § 78o(a)(1), (b)(1)(B).

    To register as a "national securities association," the association's rules must provide for "appropriate[] discipline[]" of its broker-dealer members when those members violate the association's rules or the federal securities laws. *Id.* § 78o-3(b)(6)-(7). Each registered self-regulatory organization is subject to SEC supervision of the organization's rules and disciplinary processes. *Id.* § 78s. The SEC reviews proposed rules of the self-regulatory organization and approves or rejects them. *Id.* § 78s(b). The SEC has independent authority to "abrogate, add to, and delete from" the rules of a self-regulatory organization as the SEC "deems necessary or appropriate to insure the fair administration of the self-regulatory organization, to conform its rules to requirements of this chapter and the rules and regulations thereunder applicable to such organization, or otherwise in furtherance of the purposes" of the statute. *Id.* § 78s(c).

    If a self-regulatory organization seeks to discipline a member for violating its rules, the organization must "bring specific charges, notify such member or person of, and give him an opportunity to defend against, such charges, and keep a record." *Id.* § 78o-3(h)(1); *see also id.* § 78f(b)(7) (self-regulatory organizations must "provide a fair procedure").

    Following an internal disciplinary process, a self-regulatory organization must notify the SEC of "any final disciplinary sanction" against a member. *Id.* § 78s(d)(1); 17 C.F.R. § 240.19d-1(c)(1). The SEC will review the self-regulatory organization's disciplinary decision on application by an aggrieved person or "on its own motion." 15 U.S.C. § 78s(d)(2); 17 C.F.R.

4

§§ 201.420(a)(1), 240.19d-3.  The SEC may stay the disciplinary sanction pending Commission review, whether on its own initiative or by application from the person aggrieved.  15 U.S.C. § 78s(d)(2); 17 C.F.R. §§ 201.401(d), 240.19d-2.

The SEC independently determines whether the aggrieved person engaged in the conduct that was the basis for the disciplinary sanction, whether that conduct violated the relevant rules, and whether the application of those rules to the aggrieved person is consistent with the purposes of the Exchange Act, such as protecting the public interest.  *See* 15 U.S.C. § 78s(e)(1)(A).  The SEC may "affirm," "modify," or "set aside" the self-regulatory organization's disciplinary sanction, *id.* § 78s(e)(1), as it "deems appropriate," *Nat'l Ass'n of Sec. Dealers v. SEC*, 431 F.3d 803, 806 (D.C. Cir. 2005).  The SEC's power to modify a disciplinary sanction includes the power to "cancel, reduce, or require the remission" of any sanction that, in the SEC's view, "imposes any burden on competition not necessary or appropriate" to further the purposes of the Act, or is "excessive or oppressive."  15 U.S.C. § 78s(e)(2).

A person aggrieved by a final order of the SEC may seek judicial review in an appropriate United States Court of Appeals, which shall exercise "exclusive" jurisdiction.  15 U.S.C. § 78y(a).

## II.    Facts and Prior Proceedings

**a.** FINRA is a Delaware non-profit corporation registered with the SEC as a self-regulatory organization.  *See Alpine*, 121 F.4th at 1321.  Under the SEC's supervision, FINRA has established rules for its broker-dealer members.  *See generally* FINRA, *FINRA Rules*, https://www.finra.org/rules-guidance/rulebooks/finra-rules (last visited April 3, 2025).  These rules require, among other things, that a "member, in the conduct of its business, shall observe high standards of commercial honor and just and equitable principles of trade," FINRA Rule 2010, and "must have a reasonable basis to believe that a recommended transaction or investment strategy involving a security or securities is suitable for the customer," FINRA Rule 2111.  FINRA's rules also require members to "make and preserve books and records as" specified in FINRA rules, the Exchange Act, and SEC rules.  FINRA Rules 4511, 8210.

FINRA's disciplinary actions are heard by a three-member panel composed of a FINRA hearing officer and members from the securities industry.  *See* FINRA Rule 9231.  FINRA's rules provide for a range of possible disciplinary sanctions for rules violations, including censure, fines, suspension or expulsion from membership, or cease-and-desist orders.  *See* FINRA Rule 8310.  An adverse decision by the hearing panel can be appealed within FINRA to its National Adjudicatory Council, with sanctions generally stayed pending such review, and any decision by the National Adjudicatory Council is subject to review by the FINRA Board.  FINRA Rules 1015, 9311, 9351.

**b.**  Plaintiff James Lukezic alleges that he "has been in the financial services industry since 2001."  Compl. ¶ 7.  He is "an SEC-registered investment adviser" and a "FINRA-registered broker."  *Id.*

According to the allegations in the disciplinary complaint filed by the FINRA Department of Enforcement, in February of 2022, Mr. Lukezic placed six trades "with a total principal value of approximately $1.1 million in the accounts of five customers without the customers' authorization."  Ex. 1, Compl. ¶ 1, FINRA Disciplinary Proceeding No. 2022073425001 (Dec. 17, 2024).   FINRA alleges that "Lukezic's unauthorized trading in the five customers' accounts caused losses of approximately $44,500."  *Id.* ¶ 20.  FINRA further alleges that, in a recorded phone call, Plaintiff asked a transfer agent about obtaining commissions for those unauthorized trades, asking "how do we get paid on that."  *Id.* ¶ 22.  Eventually, FINRA alleges, "all five customers complained that they had not authorized any of the mutual fund exchange transactions that were made in their accounts," *id.* ¶ 26, which led to a FINRA investigation.  Finally, FINRA also alleges that, during its investigation, Mr. Lukezic "provided false and misleading testimony" to FINRA about the unauthorized trades, both in writing and in an "on-the-record" interview.  *Id.* ¶¶ 2, 37; *see also id.* ¶ 33 (Mr. Lukezic: "I was not involved in placing any trades.").

**c.**  Several months after FINRA initiated its disciplinary action, Plaintiff filed this suit in federal district court.  Compl., ECF No. 2.  As Defendants, Plaintiff named FINRA, the SEC, and Mr. David Saltiel (who currently serves as the Acting Director of the SEC's Division of Trading and Markets) "in his individual and/or official capacities."  *Id.* at 1.

Against the SEC and Mr. Saltiel in his official capacity (collectively, "the government Defendants" or "the government")—the only parties on whose behalf this brief is being filed[1]—Plaintiff brings three claims: Count 1, which alleges that FINRA's disciplinary proceedings violate his Seventh Amendment right to a jury trial, *id.* ¶¶ 30-36; Count 2, which alleges that the SEC has improperly delegated executive power to FINRA, a private entity, in violation of Article II of the U.S. Constitution, *id.* ¶¶ 38-45; and Count 3, which alleges that FINRA's disciplinary proceedings violate the Due Process Clause of the Fifth Amendment, *id.* ¶¶ 47-57.[2]

On March 3, Plaintiff filed a motion for a temporary restraining order and a preliminary injunction.  ECF No. 1.  On March 7, the Court denied Plaintiff's request for a temporary restraining order, in a written order.  Order, ECF No. 11.  The Court's analysis "beg[a]n and end[ed] with the lack of irreparable injury," concluding that, "[w]ithout a likely irreparable injury, [Plaintiff] has not shown that he is entitled to a temporary restraining order."  *Id.* at 2-3.

## ARGUMENT

Although all of Plaintiff's claims lack merit and should be dismissed, several significant threshold issues doom Plaintiff's preliminary-injunction motion at the outset.  First, two of Plaintiff's claims—his Seventh Amendment and Due Process Clause claims—are subject to the Exchange Act's jurisdictional channeling scheme.  Accordingly, although Plaintiff may eventually pursue those claims in federal court if necessary, this is the wrong forum, at the wrong time—Plaintiff instead must await a final order from FINRA, which (if FINRA finds violations and imposes a sanction) will then be subject to *de novo* review by the SEC, whose final order (if the

---

[1] The SEC and Mr. Saltiel in his official capacity are represented by undersigned counsel from the United States Department of Justice (Civil Division, Federal Programs Branch).  *See* ECF No. 7.  Mr. Saltiel in his personal capacity is represented by different counsel from the Department of Justice (Civil Division, Torts Branch).  *See* ECF No. 21.  FINRA, as a Delaware not-for-profit corporation that is not part of the government, is represented by a private law firm.  *See* ECF Nos. 17, 22.

[2] Plaintiff also brings a *Bivens* claim against Mr. Saltiel in his individual capacity (Count 4), Compl. ¶¶ 59-69, and a Sixth Amendment claim (Count 5) against FINRA, *id.* ¶¶ 71-75.  Those claims will not be addressed in this brief.

SEC upholds FINRA's findings and imposition of sanctions) will then be subject to review in an appropriate court of appeals.  The government defendants thus not only oppose Plaintiff's request for preliminary relief on those claims, they also move to dismiss them for lack of subject-matter jurisdiction under Rule 12(b)(1).

Even setting aside those jurisdictional problems, however, Plaintiff's request for a preliminary injunction (on any of his claims) should be denied for the same reason that this Court already denied a temporary restraining order: failure to show irreparable harm.  "In general, an alleged constitutional defect in FINRA's exercise of enforcement authority is not a standalone basis for asserting an irreparable harm."  Order at 2, ECF No. 11 (citing *Alpine*, 121 F.4th at 1332-33).  And "[w]ithout a likely irreparable injury, [Plaintiff] has not shown that he is entitled to" a preliminary injunction.  *Id.* at 3.

Finally, Plaintiff is not likely to succeed on the merits of any of his claims.  As noted above, Plaintiff's Seventh Amendment and due process claims suffer from straightforward jurisdictional defects.  And as for the private-nondelegation claim—the only claim for which the government Defendants do not contest subject-matter jurisdiction—the D.C. Circuit recently recognized in *Alpine* that FINRA is a "private" entity, and thus may play a role in administering a federal scheme so long as it acts "'as an aid' to an accountable government agency that retains the ultimate authority to 'approve[], disapprove[], or modif[y]' the private entity's actions and decisions."  121 F.4th at 1321, 1325 (quoting *Adkins*, 310 U.S. at 388, 399).  The SEC serves that function here, as the D.C. Circuit recognized in all respects that are relevant to this case.

Plaintiff's Seventh Amendment and due process claims should thus be dismissed for lack of subject-matter jurisdiction, his private-nondelegation claim should be dismissed for failure to state a claim, and his preliminary-injunction motion should be denied.

## I.    PLAINTIFF'S SEVENTH AMENDMENT AND DUE PROCESS CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION.

The government Defendants do not dispute that this Court has subject-matter jurisdiction over Plaintiff's private nondelegation claim (Count 2), which challenges "the structure or very

existence of" FINRA and its relationship with the SEC. *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 189 (2023). But Plaintiff's Seventh Amendment (Count 1) and Due Process Clause (Count 3) claims both present the same threshold jurisdictional problem. The Exchange Act provides "a detailed structure for reviewing" disciplinary actions by self-regulatory organizations, and Counts 1 and 3 are each "of the type Congress intended to be reviewed within this statutory structure." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207, 212 (1994). As for those two claims, then, Plaintiff must raise them in administrative proceedings and, if still aggrieved, in a petition for review to the appropriate court of appeals. Because Plaintiff instead filed this collateral challenge, at the wrong time, in the wrong federal court, this Court lacks statutory subject-matter jurisdiction over Plaintiff's Seventh Amendment and due process claims, and should dismiss them. *See* Fed. R. Civ. P. 12(b)(1), (h)(3).

    **a.** Under 28 U.S.C. § 1331, a district court has jurisdiction to hear claims "arising under" federal law. The Supreme Court has long recognized, however, that Congress may establish a "special statutory review scheme" that "divests district courts of their ordinary jurisdiction over the covered cases." *Axon*, 598 U.S. at 185 (*citing Thunder Basin*, 510 U.S. at 207-12). Such a review scheme is "exclusive" where it applies. *Id.* at 186.

    The Exchange Act establishes such a statutory scheme with respect to review of the disciplinary actions of self-regulatory organizations like FINRA. The Exchange Act expressly allocates the initial resolution of a challenge to a FINRA-imposed disciplinary sanction—including whether FINRA properly applied its own rules or imposed an appropriate sanction—to the SEC. *See* 15 U.S.C. § 78s. The SEC may "affirm," "modify," or "set aside" FINRA's disciplinary sanctions, *id.* § 78s(e), as it "deems appropriate," *Nat'l Ass'n of Sec. Dealers v. SEC*, 431 F.3d 803, 806 (D.C. Cir. 2005). A person aggrieved by the SEC's final order regarding the disciplinary sanction may then seek direct review in an appropriate court of appeals, which shall exercise "exclusive" jurisdiction "to affirm or modify and enforce or to set aside" the SEC's order, "in whole or in part." *See* 15 U.S.C. § 78y(a)(3).

Through these "comprehensive" provisions, Congress "intended to channel objections" to FINRA's disciplinary actions "through the agency and the courts of appeals" and to "preclude federal district-court jurisdiction." *Scottsdale Cap. Advisors Corp. v. FINRA*, 844 F.3d 414, 424 (4th Cir. 2016); *see also Scottsdale Cap. Advisors Corp. v. FINRA*, 811 F. App'x 667, 667-68 (D.C. Cir. 2020) (per curiam); *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 695 (3d Cir. 1979) (recognizing that the Exchange Act establishes a "comprehensive system" for review of disciplinary actions of self-regulatory organizations).

**b.** Where, as here, Congress has established a specialized review scheme, a federal district court may exercise jurisdiction only if the claim at issue is not "of the type Congress intended to be reviewed within [the] statutory structure." *Thunder Basin*, 510 U.S. at 212. The Supreme Court has identified "three considerations . . . to aid in that inquiry," *Axon*, 598 U.S. at 186: (1) whether preclusion of review would "foreclose all meaningful judicial review"; (2) whether "the suit is 'wholly collateral to [the] statute's review provisions'"; and (3) whether "the claims are 'outside the agency's expertise.'" *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 489 (2010) (quoting *Thunder Basin*, 510 U.S. at 212-13). Applying those factors here is fatal to this Court's exercise of jurisdiction over Plaintiff's Seventh Amendment and due process claims.

**c.** The Seventh Amendment provides that "the right of trial by jury shall be preserved" for "Suits at common law, where the value in controversy shall exceed twenty dollars." U.S. Const. amend. VII. The Seventh Amendment thus "preserve[s] the right to jury trial as it existed in 1791" and applies to "statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts" at the Founding (as opposed to claims in equity and admiralty). *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41-42 (1989) (quoting *Curtis v. Loether*, 415 U.S. 189, 193 (1974)); *see SEC v. Jarkesy*, 603 U.S. 109, 122-23 (2024). A claim implicates the Seventh Amendment if it is "legal in nature"—an inquiry that turns on "the cause of action" and "remedy" at issue, with the remedy being the "more important" factor. *Jarkesy*, 603 U.S. at 122-23 (citation omitted). Even if a claim implicates the Seventh Amendment, a jury trial is not required if the matter involves "public rights" as opposed to "private rights" that are "the stuff of

10

the traditional actions at common law tried by the courts at Westminster in 1789." *Id.* at 127-28 (citation omitted).

The Due Process Clause of the Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. In considering a procedural-due-process claim, the D.C. Circuit "appl[ies] a familiar two-part inquiry," asking "[1] whether the plaintiffs were deprived of a protected interest, and, if so, [2] whether they received the process they were due." *Barkley v. U.S. Marshals Serv. ex rel. Hylton*, 766 F.3d 25, 31 (D.C. Cir. 2014) (cleaned up). "Beyond the basic requirements of notice and an opportunity to be heard, the precise requirements of procedural due process are flexible," *English v. District of Columbia*, 717 F.3d 968, 972 (D.C. Cir. 2013), and thus vary greatly across different regulatory contexts where the Clause applies.

Plaintiff's claim that FINRA's disciplinary proceedings run afoul of the Seventh Amendment or the Due Process Clause under the above principles will receive "meaningful judicial review" through the Exchange Act's review scheme. *Thunder Basin*, 510 U.S. at 212-23. Plaintiff can raise those arguments to FINRA and (if necessary) to the Commission. *See* 15 U.S.C. § 78s(e)(1). If still aggrieved by the Commission's final order, Plaintiff may petition for direct review in the court of appeals. *Id.* § 78y(a). The court of appeals may fully address Plaintiff's Seventh Amendment and due process arguments and "affirm," "modify," or "set aside" the Commission's order "in whole or in part." *Id.* § 78y(a)(3).

The review scheme thus ensures that Plaintiff's claims will be meaningfully examined. It is well established that "[r]eview of agency action in a court of appeals can alone 'meaningfully address[]' a party's claims." *Axon*, 598 U.S. at 190 (second alteration in original) (quoting *Thunder Basin*, 510 U.S. at 215); *see also Elgin v. Dep't of the Treasury*, 567 U.S. 1, 21 (2012) (the Federal Circuit's authority "to consider and decide [the] petitioners' constitutional claims" under the relevant statutory review scheme provided "meaningful review" of those claims). That is so even where the agency itself lacks the ability to address or remedy the alleged constitutional violation. *See Axon*, 598 U.S. at 190 n.2 (first citing *Elgin*, 567 U.S. at 17; and then citing *Thunder*

*Basin*, 510 U.S. at 215).  Though here, the SEC can and often does evaluate constitutional claims like the Seventh Amendment and due process claims that Plaintiff raises.  *E.g.*, *Charles L. Hill, Jr.*, Exchange Act Release No. 79459, 115 SEC Docket 4003, 2016 WL 7032731, at *3 (S.E.C. Dec. 2, 2016) (Seventh Amendment); *Mitchell M. Maynard & Dorice A. Maynard*, Investment Advisers Act Release No. 2875, 2009 WL 1362796, at *8 (S.E.C. May 15, 2009) (due process).

This is not the unusual case in which Plaintiff's constitutional claims will evade review if channeled through a statutory review scheme because the challenged agency action will never culminate in a final order that would trigger review under that scheme.  *See, e.g.*, *Free Enter. Fund*, 561 U.S. at 490 (concluding that the district court had jurisdiction to review the petitioners' structural constitutional claim because, among other things, the petitioner's challenge concerned agency action that might not result in a reviewable final order); *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 63 (1993) (concluding that the petitioners' challenge to an agency's "[f]ront-desking" practice did not have to be channeled because the practice would not result in a reviewable order under the scheme).  FINRA has already "initiated a formal disciplinary proceeding against Mr. Lukezic," alleging that he has "engaged in unauthorized trading, and provided false and misleading information to FINRA through testimony and written statements."  Compl. ¶ 16.  If FINRA imposes a disciplinary sanction on Plaintiff at the conclusion of its self-regulatory proceedings, that sanction will be subject to review by the Commission and, if necessary, the appropriate court of appeals, both of which may evaluate whether the sanction was imposed in violation of the Seventh Amendment or the Due Process Clause.

*Jarkesy*—Plaintiff's primary authority on the merits of his Seventh Amendment claim— itself confirms that the Exchange Act's review scheme provides for meaningful review.  As another district court recently recognized in dismissing a Seventh Amendment challenge to a FINRA disciplinary proceeding, the government's understanding of the Exchange Act "aligns with the procedural pathway taken in *Jarkesy*, where the Seventh Amendment claim was pursued on direct appeal from the SEC to the Fifth Circuit and then to the Supreme Court."  *Blankenship v. FINRA*, No. 24-cv-3003, 2024 WL 4043442, at *2 n.3 (E.D. Pa. Sept. 4, 2024), *appeal docketed*, No. 24-

2860 (3d Cir. Oct. 4, 2024); *see Jarkesy*, 603 U.S. at 119. Plaintiff's heavy reliance on *Jarkesy* thus confirms that he may obtain meaningful judicial review of (at least) his Seventh Amendment claim through the Exchange Act's framework. And *Thunder Basin* itself involved the channeling of a due process claim. 510 U.S. at 205.

The remaining *Thunder Basin* factors—whether the asserted claim is "wholly collateral" to the review scheme or outside of the agency's expertise—similarly do not favor district court jurisdiction. *See* 510 U.S. at 212 (cleaned up). Plaintiff's Seventh Amendment and due process claims both will ultimately turn on the nature of FINRA's procedures, and the remedies that FINRA may seek if Plaintiff is ultimately found liable for a violation of FINRA rules. But the proper construction, interpretation, and application of FINRA rules and sanctions are matters that FINRA and the SEC "customarily handle[]" and fall squarely within their area of expertise. *Axon*, 598 U.S. at 186. Thus, just as the relevant commission in *Thunder Basin* could "br[ing] to bear" its "extensive experience interpreting" the Mine Act to the claims at issue in that case that were held to fall within the exclusive review scheme, 510 U.S. at 214-15 (citation omitted), Plaintiff's Seventh Amendment and due process claims here are "intertwined with or embedded in matters on which" FINRA and the SEC "are expert," *Axon*, 598 U.S. at 195. In short, unlike the claims in *Axon*, these claims *do* involve "the sorts of procedural or evidentiary matters an agency often resolves on its way to a merits decision." *Id.* at 193.

Moreover, FINRA and the Commission could resolve the disciplinary hearing in a manner that "may obviate the need" for further review of Plaintiff's Seventh Amendment or due process claim. *Elgin*, 567 U.S. at 22-23. FINRA or the Commission could, for example, choose to forgo sanctions in response to any perceived constitutional obligation. *See Curtis*, 415 U.S. at 198 (noting that "actions seeking only equitable relief" were "unaffected" by the Court's conclusion that a jury trial was required when compensatory damages were sought). Or either body could dismiss the charges against Plaintiff or decline to impose certain sanctions because the charges and sanctions are unsupported by the facts, are contrary to the public interest, or are subject to dismissal on other securities-law-specific grounds. *See Elgin*, 567 U.S. at 22. And indeed, the

13

Commission regularly exercises its plenary authority to reverse FINRA decisions or set aside FINRA sanctions after SEC review. *See, e.g.*, *Black v. SEC*, 125 F.4th 541, 545 (4th Cir. 2025); *Springsteen-Abbott v. SEC*, 989 F.3d 4, 6 n.1 (D.C. Cir. 2021); *National Ass'n of Sec. Dealers*, 431 F.3d at 804-05; *Frank P. Quattrone*, Exchange Act Release No. 53547, 87 SEC Docket 1847, 2006 WL 768606, at *6 (S.E.C. Mar. 24, 2006). How that review process will play out here is currently unknown, because it "depends on exactly what happens in the FINRA proceedings, the result of those proceedings, and how the SEC reviews them." *Blankenship*, 2024 WL 4043442, at *2 n.3. The wide range of possibilities underscore Congress's intent to direct these sorts of claims through the Exchange Act's exclusive review scheme. *See Elgin*, 567 U.S. at 22.

**d.** *Axon* doesn't solve Plaintiff's jurisdictional problem. To the contrary, *Axon* illustrates the distinction between claims that are subject to channeling (like Plaintiff's Seventh Amendment and Due Process Clause claims) and those that are not (like Plaintiff's nondelegation claim).

In *Axon*, the petitioners alleged that the Administrative Law Judges of the SEC and the Federal Trade Commission (FTC) "could not constitutionally exercise governmental authority because of their dual-layer protection from removal," and that the FTC could not constitutionally undertake any "enforcement actions" because of its "combination of prosecutorial and adjudicative functions." 598 U.S. at 183; *see id.* at 189. The Supreme Court held that those "sweeping constitutional claims" could be brought in federal district court, notwithstanding the separate statutory review schemes governing each agency. *Id.* at 189. The Court emphasized that the claims attacked "the structure or very existence of" the agencies and charged that they were "wielding authority unconstitutionally in all or a broad swath of [their] work." *Id.* The claims were therefore untethered to any "specific substantive decision" the agencies might have taken in the petitioners' individual proceedings. *Id.*

That description may be a good fit for Plaintiff's nondelegation claim (Count 2), which similarly attacks the "very existence of" FINRA, and "the structure" of its relationship with the SEC. *See, e.g.*, Compl. ¶ 42 (alleging that, in general, "FINRA wields vast regulatory power over brokers and financial firms without being accountable to the President or adhering to the structural

constitutional requirements governing federal administrative agencies"). But Plaintiff's Seventh Amendment and due process claims, by contrast, are unlike the type of "extraordinary" challenge at issue in *Axon*. 598 U.S. at 180. In bringing those two claims, Plaintiff does not challenge the "structure" or "very existence" of FINRA or the SEC—only certain procedures that FINRA does (or does not) provide under current rules. *See, e.g.*, Compl. ¶ 36 (no "right to a jury trial" in FINRA proceedings); *id.* ¶ 49 ("FINRA's rules give its hearing officers unfettered discretion to limit evidence"); *id.* ¶ 52 (FINRA proceedings do not include "the right to subpoena discovery").

Plaintiff expresses concern with the purportedly irreparable injuries associated with the ongoing administrative proceedings. *See* Pl.'s Mot. at 15-18. But even if Plaintiff had established irreparable harm, *but see infra* Section II.a, *Axon* "does not stand for the proposition that *any* irreparable injury suffices to defeat preclusion" under the *Thunder Basin* framework. *Nat'l Treasury Emps. Union v. Trump*, No. 25-cv-420 (CRC), 2025 WL 561080, at *6 (D.D.C. Feb. 20, 2025). To the contrary, even in holding that district-court jurisdiction was available in *Axon*, "the Supreme Court was careful to add that parties will ordinarily still have to go through the agency process even when doing so would 'subject them to significant burdens' such as 'the expense and disruption of protracted adjudicatory proceedings.'" *Id.* (quoting *Axon*, 598 U.S. at 192). Those sorts of "routine burdens" do not override Congress's jurisdictional choices. *Id.*

Moreover, while the petitioners in *Axon* would have had "the same claim" even if they had "*won* before the agency," 598 U.S. at 191, that is not true with respect to plaintiff's Seventh Amendment or due process claims. For example, if FINRA imposes no disciplinary sanction or imposes only sanctions that are equitable in nature, the Seventh Amendment would not be implicated at all. *See Jarkesy*, 603 U.S. at 122 (the amendment "embraces all suits which are not of equity or admiralty jurisdiction" (cleaned up)); *Curtis*, 415 U.S. at 198. Nor would any "process" be "due" under the Due Process Clause, in the absence of an actual deprivation of a cognizable interest in liberty or property. After all, "[t]he first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or

'liberty'" at all—if not, there is no need to "look to see if the [government's] procedures comport with due process." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999).

For similar reasons, plaintiff's Seventh Amendment and due process claims do not involve the rare type of "here-and-now injury" for which court of appeals review would necessarily be insufficient after administrative proceedings have concluded.  *See Axon*, 598 U.S. at 191-92 (citation omitted).  If the Commission issues a final order affirming a disciplinary sanction that Plaintiff believes infringes his constitutional rights, he may seek review in the court of appeals, and, as in *Jarkesy* itself, the court may vacate any sanction if it agrees with his claim.  *See* 603 U.S. at 119-20.  Indeed, under FINRA's rules, any final disciplinary sanction imposed by FINRA (other than a bar or expulsion) would be automatically stayed pending SEC review, *see* FINRA Rule 9370(a), and the SEC may stay *any* FINRA sanction pending its review, *see* 15 U.S.C. § 78s(d)(2); 17 C.F.R. § 201.401(d).  That stands in sharp contrast to *Axon*, where the petitioners' structural claims were not directed to any particular "order" or "fine," but rather from having to appear before an "illegitimate decisionmaker" who allegedly lacked any "power to proceed at all," regardless of the underlying dispute at issue, or the procedures used.  598 U.S. at 189-92.

Put simply, unlike the structural constitutional claims raised by the petitioners in *Axon*— and unlike Plaintiff's private-nondelegation claim in this very case—Plaintiff's Seventh Amendment and due process claims do not challenge FINRA's or the Commission's "power generally" or their power to discipline their members.  *See Axon*, 598 U.S. at 193.  They instead challenge something "particular about how that power [is] wielded."  *Id.*  Such a claim bears no resemblance to the "existential" constitutional challenges at issue in *Axon*.  *Id.* at 180; *see also, e.g.*, *Alpine Sec. Corp. v. Nat'l Sec. Clearing Corp.*, No. 23-cv-782, 2024 WL 1011863, at *5 (D. Utah Mar. 8, 2024) ("Like *Free Enterprise Fund*, *Axon Enterprise* neither held nor suggested that *Thunder Basin*'s decision to allow Due Process claims to be channeled through an agency's adjudicatory program (later to be reviewed by federal courts) should be reconsidered.").

For these reasons, it is "unsurprising" that many courts that have considered this question since *Axon* have held that Seventh Amendment and due process claims are "[u]nlike the challenge

in *Axon*" and must instead be channeled pursuant to special review schemes. *Vape Cent. Grp., LLC v. FDA*, Civ. No. 24-3354 (RDM), 2025 WL 637416, at *6 (D.D.C. Feb. 27, 2025) (Seventh Amendment); *see, e.g.*, *Alpine Sec. Corp. v. Nat'l Sec. Clearing Corp.*, No. 23-cv-782, 2025 WL 901847, at *5 (D. Utah Mar. 25, 2025) (due process); *Express Scripts, Inc. v. FTC*, No. 24-cv-01549, 2025 WL 521812, at *7 (E.D. Mo. Feb. 18, 2025) (due process); *Blankenship*, 2024 WL 4043442, at *3 (Seventh Amendment); *VHS Acquisition Subsidiary No. 7 v. NLRB*, No. 1:24-cv-02577 (TNM), 2024 WL 4817175, at *3-4 (D.D.C. Nov. 17, 2024) (same); *YAPP USA Auto. Sys., Inc. v. NLRB*, No. 24-12173, 2024 WL 4119058, at *11 & n.6 (E.D. Mich. Sept. 9, 2024) (same), *appeal docketed*, No. 24-1754 (6th Cir. Sept. 9, 2024); *Nexstar Media, Inc. Grp. v. NLRB*, 746 F. Supp. 3d 464, 472 (N.D. Ohio 2024) (same). This Court should thus dismiss Counts 1 and 3 for lack of subject-matter jurisdiction.

## II.    PLAINTIFF'S PRELIMINARY-INJUNCTION MOTION SHOULD BE DENIED.

Whether or not the Court has subject-matter jurisdiction over Counts 1 and 3, his motion for a preliminary injunction should be denied in its entirety. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Its purpose "is to preserve the status quo while the court considers the merits of the case." *Nat'l Council of Nonprofits v. OMB*, No. 25-cv-239 (LLA), 2025 WL 314433, at *2 (D.D.C. Jan. 28, 2025). Plaintiff may be awarded such relief only "upon a clear showing" that he satisfies the *Winter* factors: that (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20, 22. The last two factors merge where, as here, the government is the opposing party. *Guedes v. ATF*, 920 F.3d 1, 10 (D.C. Cir. 2019); *accord Pub. Citizen Health Rsch. Grp. v. Acosta*, 363 F. Supp. 3d 1, 20 (D.D.C. 2018). "[P]laintiff[] bear[s] the burden of persuasion on all four preliminary injunction factors in order to secure such an 'extraordinary remedy.'" *Open Top Sightseeing USA v. Mr. Sightseeing, LLC*, 48 F. Supp. 3d 87, 90 (D.D.C. 2014). Here, Plaintiff cannot carry his burden on any of these factors.

a.        **Plaintiff cannot demonstrate irreparable harm.**

"The D.C. Circuit 'has set a high standard for irreparable injury.'"  *Univ. of Cal. Student Ass'n v. Carter*, No. 25-cv-354 (RDM), 2025 WL 542586, at *5 (D.D.C. Feb. 17, 2025) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)).  "It 'must be both certain and great,' 'actual and not theoretical,' and 'beyond remediation.'"  *Id.* (citation omitted).  "A movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief."  *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297.  That is the case here.

Although he bears the burden, *see Winter*, 555 U.S. at 20, Plaintiff's primary argument on irreparable harm (at 15-16) is, essentially, that he is likely to succeed on the merits.  And so, relying on a quotation from the D.C. Superior Court (which is reproduced, in passing, in an opinion from the D.C. Court of Appeals), Plaintiff asserts that "[t]he Supreme Court has long recognized that 'a violation of constitutional rights constitutes . . . irreparable harm per se.'"  Pl.'s Mot. at 15 (quoting *District of Columbia v. Eastern Trans-Waste of Md., Inc.*, 758 A.2d 1, 15 (D.C. 2000)).[3]

At least in this context, Plaintiff is mistaken.  Instead, as this Court correctly recognized in denying Plaintiff's request for a temporary restraining order, the D.C. Circuit held last November that, "[i]n general, an alleged constitutional defect in FINRA's exercise of enforcement authority is *not* a standalone basis for asserting an irreparable harm."  Order Denying TRO at 2 (emphasis added) (citing *Alpine*, 121 F.4th at 1332-33).  That is because review from the SEC and (if necessary) the federal courts "can take place after FINRA's sanctions take effect," and the harms from "many types of sanctions imposed by FINRA, short of expulsion, can be undone later."  *Id.* (quoting *Alpine*, 121 F.4th at 1330-31).  In short, "[c]ensures can be rescinded, fines can be

---

[3] Plaintiff also includes (at 15-16) a "see also" citation to *Elrod v. Burns*, 427 U.S. 347, 373 (1976), but cuts off the quote mid-sentence in a way that materially alters its meaning.  In *Elrod*, the Supreme Court stated in one sentence that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  427 U.S. at 373. There are no "First Amendment freedoms" at stake in this case.  *Id.*

returned, and cease-and-desist orders can be lifted." *Alpine*, 121 F.4th at 1330-31.  And under FINRA rules, "[t]he filing with the SEC of an application for review by the SEC shall stay the effectiveness of any sanction, other than a bar or an expulsion imposed in a decision constituting final disciplinary action of FINRA."  FINRA Rule 9370(a); *accord Black*, 125 F.4th at 547.

    *Alpine* is thus fatal to Plaintiff's theory of irreparable harm.  Here, Plaintiff does not even allege that he faces any threat of immediate expulsion from the industry, nor any form of discipline more severe than "monetary sanctions" or fines.  *See* Compl., Prayer for Relief ¶ E (seeking to "[e]njoin FINRA from imposing monetary sanctions or penalties").  FINRA's administrative complaint, likewise, requests "monetary sanctions," without explicitly mentioning any other form of relief.  Ex. 1, FINRA Admin. Compl., Prayer for Relief ¶ B (seeking "one or more of the sanctions provided under FINRA Rule 8310(a), including monetary sanctions").  And even if FINRA does seek to impose some form of discipline short of expulsion, Plaintiff can obtain what effectively amounts to an automatic stay, pending SEC review.  *See* FINRA Rule 9370(a).  So, as a matter of binding D.C. Circuit precedent, Plaintiff cannot show irreparable harm in this challenge to a routine FINRA disciplinary proceeding.  As Chief Judge Boasberg put it just yesterday, "[t]he upshot of *Alpine*'s holding is that only immediate, unreviewable expulsion justifies preliminary relief; every FINRA sanction short of such expulsion does not."  *Smith v. FINRA*, No. 25-cv-447 (JEB), 2025 WL 985447, at *2 (D.D.C. Apr. 2, 2025); *see also id.* at *3 (citing this Court's order denying a temporary restraining order in this case).

    Plaintiff's only other argument about irreparable harm is that he "faces severe economic consequences as a result of FINRA's allegations."  Pl.'s Mot. at 17.  But "[t]he loss of business opportunities, market share, and customer goodwill are typically considered to be economic harms," and "[i]t is well settled in this Circuit that 'economic loss does not, in and of itself, constitute irreparable harm.'"  *Air Transp. Ass'n of Am. v. Exp.-Imp. Bank of the U.S.*, 840 F. Supp.

2d 327, 335 (D.D.C. 2012) (quoting *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).[4]

Plaintiff argues that his case fits within an exception for cases in which "the loss threatens the very existence of the movant's business." Pl.'s Mot. at 17 (quoting *District of Columbia v. Grp. Ins. Admin.*, 633 A.2d 2, 23 (D.C. 1993)). But that speculative assertion is unsupported by the (very sparse) evidence in the record. To the contrary, Plaintiff's brief asserts that, "[m]ost critically, as a broker, Mr. Lukezic's business depends entirely on his ability to maintain his registration with FINRA." *Id.* But Plaintiff nowhere alleges that FINRA (or the SEC, or anyone) has stripped him of that registration, nor threatened to do so.

Plaintiff asserts that the mere existence of a pending disciplinary proceeding has "destroyed a substantial number of Mr. Lukezic's client relationships and prevented the formation of new ones." *Id.* But that factual assertion is made only in Plaintiff's brief, with no citation. Regardless, that is exactly the sort of speculative "loss of business opportunities, market share, and customer goodwill" that does not suffice to show irreparable harm. *Air Transp. Ass'n*, 840 F. Supp. 2d at 335; *see, e.g.*, *Novartis*, 2024 WL 3823270, at *5 ("Taking into account the evidence in the record, including the statistics drawn from Novartis's public filings, the Court finds that Novartis has not met its burden of demonstrating that it is likely to experience sales losses at the magnitude that it predicts."); *Nat'l Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34, 52 (D.D.C. 2011) ("While Mr. Johnson's representations raise legitimate concerns about the current and future health of his company, his declaration falls short of what is necessary to merit a finding of irreparable harm.").

---

[4] Plaintiff does not argue that this rule operates differently in lawsuits against the federal government, but had he done so, the argument would have failed. *See, e.g.*, *Air Transp. Ass'n*, 840 F. Supp. 2d at 335-36 (collecting cases that reject this argument, which is "not the law of this Circuit," as it would "effectively eliminate the irreparable harm requirement" in suits against any "agency with sovereign immunity"). This Court has recognized that "[e]ven unrecoverable economic losses do not constitute irreparable harm if they do not spell financial disaster for the moving party." *Novartis Pharms. Corp. v. Becerra*, No. 24-cv-02234 (DLF), 2024 WL 3823270, at *4 (D.D.C. Aug. 13, 2024) (cleaned up).

Plaintiff's conclusory declaration does raise the (unsubstantiated) possibility of some future "lost profit," or missed opportunities to "expand [his] business." Affidavit of J. Lukezic ¶¶ 4-5, ECF No. 1-3. But those financial harms, even if they were both proven and significant, "do[] not establish that" that mere existence of a pending FINRA proceeding, during this litigation, will "threaten [the] very existence" of Plaintiff's business. *Novartis*, 2024 WL 3823270, at *4. Indeed, Plaintiff does not even explain the nature of his financial relationship with the two firms he is associated with, *see* Compl. ¶ 7—information that is relevant to the question of whether he faces any genuine and imminent "financial disaster" that justifies extraordinary and time-sensitive injunctive relief, *Novartis*, 2024 WL 3823270, at *4, rather than simply litigating this case to final judgment, in the normal course. *See* OLD SLIP CAPITAL, Contact Us, https://www.oldslipcap.com/contact-us (offices at 40 Wall Street in New York City, as well as in Houston, Los Angeles, Chicago, Atlanta, Miami, Montreal, and Tel Aviv).

Were there any doubt on the matter, Plaintiff's significant delay in seeking injunctive relief further undermines his arguments about irreparable harm. As this Court recognized in denying a temporary restraining order, FINRA's investigation began "over three years" ago. Order Denying TRO at 3. Even once FINRA filed a formal complaint, Plaintiff still "waited nearly three months" more to file this suit, which "is only further evidence of the lack of urgent injury." *Id.* (citing *Open Top Sightseeing*, 48 F. Supp. 3d at 90 ("Courts have found that an unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm.")).

In short, this Court has already concluded once—applying the same standard that applies here, *see, e.g.*, *Carter*, 2025 WL 542586, at *4—that Plaintiff has not carried his burden to show irreparable harm. There is no legal or factual basis to reach a different conclusion now.

### b.    Plaintiff is unlikely to succeed on the merits.

Plaintiff's failure to demonstrate irreparable harm is sufficient to deny his preliminary-injunction motion in full. And at least with respect to Plaintiff's Seventh Amendment and due process claims, Plaintiff's failure to establish subject-matter jurisdiction also means this Court

need not (and should not) reach the merits of those claims at all.  Regardless, all of Plaintiff's claims are likely to fail on the merits.  Plaintiff's motion could thus be denied for that reason, too.

                i.      <u>Plaintiff's private-nondelegation claim is unlikely to succeed on the merits.</u>

Plaintiff alleges that "Defendant SEC has improperly delegated its enforcement authority to FINRA in a manner that violates the nondelegation doctrine."  Compl. ¶ 40; *see also* Pl.'s Mot. at 11-12 ("FINRA's Proceedings Violate Article II's Nondelegation Doctrine").  This appears to be an argument that FINRA's status as a private entity violates the so-called private-nondelegation doctrine[5]—although Plaintiff does not use that phrase, and his precise theory is at times difficult to pin down.  *See* Pls.' Mot. at 11-12.  Regardless, Plaintiffs' private-nondelegation claim fails because, as every court to consider this question has concluded, FINRA "function[s] subordinately" to the SEC.  *Adkins*, 310 U.S. at 399.  FINRA's basic relationship with the SEC is thus "unquestionably constitutional."  *Oklahoma v. United States*, 62 F.4th 221, 243 (6th Cir. 2023) (Cole, J., concurring), *cert. denied*, 144 S. Ct. 2679 (2024).

    **a.**  The earliest applications of the private-nondelegation doctrine concerned ordinances that allowed homeowners to set zoning requirements for their neighborhoods.  *Washington ex rel. Seattle Title Tr. Co. v. Roberge*, 278 U.S. 116, 120-22 (1928); *Thomas Cusack Co. v. City of Chicago*, 242 U.S. 526, 530 (1917); *Eubank v. City of Richmond*, 226 U.S. 137, 143-44 (1912).  Such ordinances were unconstitutional because they "conferr[ed] the power on some property holders to virtually control and dispose of the property rights of others," without setting any standard to prevent the private property owners from making public policy "solely for their own interest, or even capriciously."  *Eubank*, 226 U.S. at 143-44.  These ordinances were unlawful where they "gave to [the decision of private entities] the effect of law."  *Thomas Cusack Co.*, 242 U.S. at 531.  Where government officials were "bound by the decision" of entities who themselves

---

[5] Plaintiff makes no argument about the (more familiar) public-nondelegation doctrine of Article I, which requires Congress to use an "intelligible principle" when delegating statutory authority to the Executive Branch.  *Gundy v. United States*, 588 U.S. 128, 135 (2019) (plurality op.).

were not "bound by any official duty," the "delegation of power so attempted [was] repugnant to the due process clause of the Fourteenth Amendment." *Roberge*, 278 U.S. at 122.

The Supreme Court applied that doctrine to the federal government in *Carter v. Carter Coal Co.*, 298 U.S. 238 (1936). In *Carter Coal*, the Court held unlawful a federal statute that allowed the producers of more than two-thirds of the coal in any given district to set wages and hours for all the producers in that district, unconstrained by any public agency review. *Id.* at 281-83. That "obnoxious" delegation "to private persons whose interests may be and often are adverse to the interests of others in the same business," the Court held, was "clearly arbitrary" and "clearly a denial of rights safeguarded by the due process clause of the Fifth Amendment." *Id.* at 311.

After *Carter Coal*, Congress enacted a new statute under which local boards consisting of private coal producers would be organized under the Bituminous Coal Code and would "operate as an aid to the [National Bituminous Coal] Commission but subject to its pervasive surveillance and authority." *Adkins*, 310 U.S. at 388. The new statute "specifie[d] in detail the methods of [the boards'] organization and operation, the scope of their functions, and the jurisdiction of the Commission over them." *Id.* The Coal Commission was "empowered to fix minimum prices . . . in accordance with stated standards" following a procedure in which the code boards would "propose minimum prices pursuant to prescribed statutory standards," which "may be approved, disapproved, or modified by the Commission." *Id.*

In reviewing this revised scheme in *Sunshine Anthracite Coal Co. v. Adkins*, the Supreme Court determined that the revised statutory standards for fixing coal prices were "a valid delegation of authority" to the Coal Commission because they "far exceed[ed] in specificity others which have been sustained." *Id.* at 398. Then, in addressing the plaintiff's private-nondelegation arguments, the Court held that no constitutional problem arose from involving private industry in the regulatory scheme because "members of the code function subordinately to the Commission." *Id.* at 399. "It, not the code authorities, determines the prices. And it has authority and surveillance over the activities of these authorities. Since law-making is not entrusted to the industry, this statutory scheme is unquestionably valid." *Id.*

23

**b.** Under *Adkins*, Plaintiffs' private-nondelegation claim fails, because FINRA "function[s] subordinately" to the SEC, which wields "authority and surveillance over" FINRA's activities. *Id.* "The SEC . . . retains formidable oversight power[s] to supervise, investigate, and discipline [FINRA] for any possible wrongdoing or regulatory missteps." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 101 (2d Cir. 2007). "[T]he SEC may abrogate, add to, and delete from all FINRA rules as it deems necessary." *Aslin v. FINRA*, 704 F.3d 475, 476 (7th Cir. 2013) (citing 15 U.S.C. § 78s(b)(1), (c)). Moreover, FINRA must notify the SEC of any final disciplinary action it takes against a member, which is thereafter subject to *de novo* review by the SEC, acting *sua sponte* or in response to a petition from the aggrieved party. *See* 15 U.S.C. § 78s(d)(1)-(2). As a final backstop, the SEC may suspend or revoke FINRA's registration (and thus its ability to exercise the functions of an SRO under the statute) "if in [the SEC's] opinion such action is necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of this chapter." 15 U.S.C. § 78s(h)(1).

"In case after case, the courts have upheld this arrangement, reasoning that the SEC's ultimate control over the rules and their enforcement makes the SROs permissible aides and advisors." *Oklahoma*, 62 F.4th at 229. Indeed, every court of appeals to consider this question has agreed: under *Adkins*, the federal securities laws do not "unconstitutionally delegate[] power to" FINRA (or its predecessor, the NASD) because the statute gives the SEC the power (1) "to approve or disapprove of [its] Rules," and (2) to conduct *de novo* review of "any disciplinary action" after initial adjudication before FINRA. *R.H. Johnson & Co. v. SEC*, 198 F.2d 690, 695 (2d Cir. 1952); *see Todd & Co. v. SEC*, 557 F.2d 1008, 1012–13 (3d Cir. 1977); *First Jersey*, 605 F.2d at 697; *Sorrell v. SEC*, 679 F.2d 1323, 1325–26 (9th Cir. 1982).

**c.** The D.C. Circuit's decision in *Alpine*, yet again, largely resolves this question in favor of Defendants, at least at the preliminary-injunction stage. In *Alpine*, the D.C. Circuit recognized that FINRA is a "private" entity and that, under the private-nondelegation doctrine, a private entity may play a role in administering a federal scheme so long as it acts "'as an aid' to an accountable government agency that retains the ultimate authority to 'approve[], disapprove[], or modif[y]' the

24

private entity's actions and decisions." 121 F.4th at 1321, 1325 (quoting *Adkins*, 310 U.S. at 388, 399). The D.C. Circuit explained that, under the statutory scheme, "SEC oversight of FINRA disciplinary actions involves the SEC 'conduct[ing] its own review' of any final decision or sanction" and approving, disapproving, or modifying FINRA's decision. *Id.* at 1326.

Importantly, *Alpine* cast no doubt on the constitutionality of the SEC's supervision of FINRA disciplinary actions in the ordinary course. *Id.* at 1326. The Court identified, however, a likely private-nondelegation concern with "expulsions imposed through FINRA's expedited proceedings," because those orders "function[] differently" from other forms of FINRA discipline. *Id.* In short, they take effect immediately under FINRA's rules and, in light of other statutory requirements, have the practical effect of requiring a FINRA member to "shut down" operations entirely. *Id.* at 1326-31. The Court reasoned that the "unique" nature of that disciplinary sanction made later plenary review by the SEC "a largely academic exercise." *Id.* at 1326, 1331 & n.3. And although the SEC may grant a stay of FINRA's disciplinary sanction, the D.C. Circuit was not convinced that the SEC's stay authority was sufficient to alleviate the likely private-nondelegation concern that it had identified with respect to expulsion sanctions issued in expedited proceedings. *See id.* at 1326-28. The D.C. Circuit was careful, however, to specify that its "opinion [wa]s limited to" that particular disciplinary action. *Id.* at 1326, 1330; *see also Alpine v. NSCC*, 2025 WL 901847, at *8 (rejecting private-nondelegation claim and distinguishing the D.C. Circuit's decision in *Alpine*, in part because "the proceedings at issue . . . are not expedited").

*Alpine* therefore underscores the errors of Plaintiff's arguments here, as Plaintiff does not allege that he faces any expedited expulsion proceeding. The D.C. Circuit made clear in *Alpine* that "[i]n many cases, the lack of pre-enforcement government review is unlikely" to implicate the concerns the Court had identified with respect to expedited expulsion proceedings, because SEC "review can take place after FINRA's sanctions can take effect." 121 F.4th at 1330. For example, "[c]ensures can be rescinded, fines can be returned, and cease-and-desist orders can be lifted." *Id.* at 1330-31.

To be sure, the dissent in *Alpine* "favor[ed] a broader injunction that would prevent FINRA from policing its member's misconduct at all," *id.* at 1328, on the theory that FINRA is likely unconstitutional because it exercises "significant executive authority that the Constitution vests in the Executive Branch alone," *id.* at 1343 (Walker, J., concurring in the judgment in part and dissenting in part)—essentially, Plaintiff's position here. But the *Alpine* majority rejected that approach as incorrectly "meld[ing] the private nondelegation doctrine with Alpine's Appointments Clause arguments" and as "unsupported by a single case from the Supreme Court, this court, or any appellate court." *Id.* at 1329.

Again, as discussed *supra* at 18-19, Plaintiff does not allege that he faces any threat of expulsion from the industry, let alone on an expedited or unreviewable basis. Accordingly, under *Alpine*, Plaintiff is not likely to succeed on the merits of a private-nondelegation challenge to this routine FINRA disciplinary proceeding.

            ii.    <u>Plaintiff's Seventh Amendment and Due Process Clause claims are unlikely to succeed on the merits.</u>

Plaintiff's Seventh Amendment and due process claims are unlikely to succeed on the merits because this Court should never *reach* the merits, due to the lack of subject-matter jurisdiction discussed above. *See supra*, Section I. For that reason, and because of Plaintiff's inability to show irreparable harm under the D.C. Circuit's decision in *Alpine,* this Court need not go any further. *See, e.g.*, *Munaf v. Geren*, 553 U.S. 674, 691 (2008) ("Review of a preliminary injunction 'is not confined to the act of granting the injunction, but extends as well to determining whether there is any insuperable objection, in point of jurisdiction or merits, to the maintenance of the bill, and, if so, to directing a final decree dismissing it.'") (alterations and citation omitted).

       **c.**    **The balance of equities and the public interest disfavor injunctive relief.**

The balance of the equities and the public interest "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). These factors further weigh against injunctive relief here.

The primary goal of Plaintiff's preliminary-injunction motion seems to be, somehow, to make information about his ongoing FINRA proceeding disappear from the internet.  *See, e.g.*, Pl.'s Mot. at 22-23 (seeking "immediate injunctive relief" because "FINRA continues to publish the unfounded and false allegations to its BrokerCheck.org website").  But FINRA is a "registered securities association," so Congress requires it to "establish and maintain a system for collecting and retaining registration information."  15 U.S.C. § 78*o*-3(i)(1)(A).  And Congress explicitly defined "registration information" to include information about "disciplinary actions, regulatory, judicial, and arbitration proceedings" relating to "brokers and dealers and their associated persons."  *Id.* § 78*o*-3(i)(5).  Congress further required FINRA to "establish and maintain . . . a readily accessible electronic or other process, to receive and promptly respond to inquiries regarding . . . registration information on its members and their associated persons."  *Id.* § 78*o*-3(i)(1); *see also, e.g.*, *Turbeville v. FINRA*, 874 F.3d 1268, 1271-72 (11th Cir. 2017) (explaining that "FINRA makes these disclosures" required under 15 U.S.C. § 78o-3(i)(1) "through  its 'BrokerCheck' program, an online database that contains a report on each currently and formerly registered broker" that is "available to the public").

Congress plainly determined that it was important to the investing public, and to maintain confidence in the securities markets, that information about disciplinary proceedings remain available to those who would entrust their life savings, their retirement accounts, and their hard-earned wages to FINRA members like Plaintiff.  There is no basis for Plaintiff or this Court to displace that congressional judgment, nor to carve out an exception for Mr. Lukezic alone.

Furthermore, the FINRA Hearing Panel has not yet adjudicated the allegations about Mr. Lukezic that appear in the administrative complaint. Once it does, and if Plaintiff seeks SEC review, the SEC will then be able to fairly determine whether, considering FINRA's decision and any other evidence that Plaintiff might present to the SEC, the public interest would be served by staying the effectiveness of any sanction pending further review.  At this time, however, Plaintiff presents no basis by which this Court could conclude that the public interest would be advanced by short-circuiting further self-regulatory proceedings and SEC review of those proceedings.  To

the contrary, doing so would send a message to anyone dissatisfied with any ongoing FINRA proceeding (or any BrokerCheck report) that immediate litigation is an available tool to grind FINRA's disciplinary apparatus to a halt.  That result would not only incentivize a flood of copy-cat suits, but also risks placing the investing public at significant risk of ongoing harm.

## III.    PLAINTIFF'S PRIVATE-NONDELEGATION CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

For largely the same reasons that Plaintiff's private-nondelegation claim is unlikely to succeed on the merits, *see supra*, Section II.b.i, , it should also be dismissed for failure to state a claim upon which relief can be granted, under Federal Rule of Civil Procedure 12(b)(6).  To be sure, *Alpine* itself arose in a preliminary-injunction posture and thus the D.C. Circuit, as a formal matter, did not fully "resolve[]" it "on the merits."  121 F.4th at 1337.  Nevertheless, the approach taken by the majority in *Alpine* is consistent with centuries of historical practice, *see supra* at 2-5, and with "case after case" around the country, in which courts "have upheld this arrangement, reasoning that the SEC's ultimate control over the rules and their enforcement" is sufficient to satisfy constitutional requirements.  *Oklahoma*, 62 F.4th at 229.  There is no basis for this Court to chart a different course here.

<u>CONCLUSION</u>

For these reasons, the Court should dismiss Plaintiff's Seventh Amendment and due process claims for lack of subject-matter jurisdiction, dismiss Plaintiff's private-nondelegation claim for failure to state a claim, and deny Plaintiff's motion for a preliminary injunction.

DATE: April 3, 2025                  Respectfully submitted,

                                     YAAKOV M. ROTH
                                     Acting Assistant Attorney General
                                     Civil Division

                                     LESLEY FARBY
                                     Deputy Director
                                     Federal Programs Branch

                                     CHRISTOPHER HALL
                                     Assistant Branch Director
                                     Federal Programs Branch

                                     */s/ Stephen M. Pezzi*
                                     STEPHEN M. PEZZI (D.C. Bar No. 995500)
                                      Senior Trial Counsel
                                     TAYLOR PITZ
                                      Trial Attorney
                                     United States Department of Justice
                                     Civil Division, Federal Programs Branch
                                     1100 L Street, NW
                                     Washington, DC 20005
                                     Tel: (202) 305-8576
                                     Email: stephen.pezzi@usdoj.gov

                                     *Counsel for the SEC and for David Saltiel in his
                                     Official Capacity as Acting Director of the Division
                                     of Trading and Markets at the SEC*