UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES J. LUKEZIC, *Plaintiff*, v. FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC., *et al.*, *Defendants*. | No. 25-cv-00623 (DLF) |

**MEMORANDUM OPINION AND ORDER**

James Lukezic brings this action against the Financial Industry Regulatory Authority (FINRA), the U.S. Securities and Exchange Commission (SEC), and David Saltiel, the Director of the Division of Trading and Markets for SEC. Compl., Dkt. 2. Lukezic seeks injunctive relief to preclude the defendants from engaging in disciplinary action against him. Before the Court is the plaintiff's Motion for a Preliminary Injunction. Pl.'s Mot., Dkt. 1. For the reasons that follow, the Court will deny the motion.

**I.     BACKGROUND**

Lukezic is an "SEC-registered investment adviser" and a "FINRA-registered broker." Am. Compl. ¶ 7, Dkt. 40. He serves as the CEO and Managing Principal of Old Slip Capital Management, which is a FINRA member firm. *Id*.

FINRA is Delaware non-profit corporation and a self-regulating organization (SRO) under the Securities Exchange Act of 1934. *Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314, 1321 (D.C. Cir. 2024), *cert. denied*, No. 24-904, 2025 WL 1549780 (U.S. June 2, 2025). Pursuant to that statutory scheme, SROs exercise a supervisory role over securities markets, and in turn, SROs are

subject to SEC oversight. *Id*. at 1322–33. When FINRA engages in disciplinary actions against its members or their associated persons, SEC typically conducts a *de novo* review of any final decision or sanction issued by FINRA. *Id.* at 1326. SEC may "approve, disapprove, or modify FINRA's actions," *id*., and SEC's decisions are subject to review by the United States Courts of Appeals, *see* 15 U.S.C. § 78y(a)(1).

Around March of 2022, FINRA began investigating Lukezic for engaging in unauthorized trading. *See* FINRA Compl. ¶¶ 1, 28, FINRA Disciplinary Proceeding No. 2022073425001 (Dec. 17, 2024), Dkt. 31-3. Beginning in February of 2022, Lukezic allegedly placed six unauthorized trades "with a total principal value of approximately $1.1 million in the accounts of five customers without the customers' authorization," and provided "false and misleading information" about those transactions, in violation of FINRA Rules 2010 and 8210. *Id.* ¶¶ 1–2. FINRA filed a formal disciplinary complaint against Lukezic in December 2024. *See id*. Contemporaneously, it filed a Form U6—Subject of Action in the FINRA Central Registration Depository, pursuant to the requirements of the Securities Exchange Act. Form U6, Dkt. 31-7; *see* 15 U.S.C. § 78o-3(i)(1), (5) (requiring FINRA to make information about "disciplinary proceedings" available in a "readily accessible electronic or other process").

Lukezic's disciplinary hearing before FINRA's Office of Hearing Officers (OHO) is scheduled to take place on October 6–10, 2025. *See* Joint Status Rep. at 2, Dkt. 59. Because he is "person associated with" a FINRA member, FINRA Compl. ¶ 46, he faces the potential sanctions outlined in FINRA Rule 8310, *see* FINRA Rule 8310, Dkt. 31-4 (providing that FINRA may (1) "censure a . . . person associated with a member"; (2) "impose a fine upon a . . . person associated with a member"; (3) "suspend the registration of a person associated with a member"; (4) "revoke or cancel the registration of a person associated with a member"; (5) "suspend or bar

2

a . . . person associated with a member from association with all members"; (6) "impose a temporary or permanent cease and desist order against a . . . person associated with a member"; or (7) "impose any other fitting sanction."). If any sanction is imposed by OHO, Lukezic may appeal that decision before FINRA's National Adjudicatory Counsel, and any appeal will automatically stay OHO's decision. *See* FINRA Rule 9311, Dkt. 31-4. The Board's decision, in turn, may be appealed to the SEC, and such appeal would "automatically stay[] the effectiveness of all sanctions other than a bar or expulsion issued following a non-expedited disciplinary proceeding." *Alpine*, 121 F.4th at 1331 (citing FINRA Rule 9370(a)). Finally, SEC's decision is subject to review in by United States Courts of Appeals. *See* 15 U.S.C. § 78y(a)(1).

Rather than following that adjudicatory process, on March 3, 2025, Lukezic filed the instant action and motion for emergency relief in this Court, asserting constitutional violations and harms to his professional reputation. *See* Pl's Mot. On March 7, the Court denied the motion for TRO for lack of irreparable harm. Order of March 7, 2025, Dkt. 11. Now before the Court is the Motion for Preliminary Injunction.

## II.   LEGAL STANDARDS

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). To prevail, a party seeking preliminary injunctive relief must make a "clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest." *League of Women Voters v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016) (citations and internal quotation marks omitted). Where a federal agency is the defendant, the last two factors merge. *See Am.*

*Immigr. Council v. DHS*, 470 F. Supp. 3d 32, 36 (D.D.C. 2020). The lack of a likely irreparable injury alone is enough to defeat a motion for preliminary relief. *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). And the asserted injury must "directly result from the action which the movant seeks to enjoin." *Wisc. Gas Co. v. FERC*, 758 F.2d 669 (D.C. Cir. 1985).

### III. ANALYSIS

The Court's analysis will begin and end with lack of irreparable harm. Lukezic asserts two sources of irreparable harm: (1) constitutional violations of his rights under the nondelegation doctrine, the Seventh Amendment right to a jury trial, and the Due Process Clause, *see* Pl.'s Mot. at 15–16; and (2) "severe economic consequences as a result of FINRA's allegations," *id.* at 17–18.

#### A.   **Constitutional Claims**

Start with Lukezic's nondelegation claim. In general, an alleged constitutional defect in FINRA's exercise of enforcement authority is not a standalone basis for asserting an irreparable harm. *Alpine*, 121 F.4th at 1332–33. As the D.C. Circuit recently explained in *Alpine*, a lack of pre-enforcement government review still leaves open judicial "review . . . after FINRA's sanctions take effect." 121 F.4th at 1330. Even if Lukezic is "the subject of an arguably unconstitutional regulatory action," his constitutional arguments are properly raised "within the context of an administrative enforcement proceeding." *John Doe Co. v. CFPB*, 849 F.3d 1129, 1134 (D.C. Cir. 2017) (collecting cases). Where raising a claim in an actual enforcement proceeding does not "somehow foreclose all meaningful judicial review," *id.* (citation modified), a constitutional violation is not *per se* irreparable harm. Moreover, the harms from "many types of sanctions imposed by FINRA, short of expulsion, can be undone later." *Alpine*, 121 F.4th at 1330.

4

Ultimately, "only immediate, unreviewable expulsion justifies preliminary relief; every FINRA sanction short of such expulsion does not." *Smith v. FINRA*, No. 25-cv-447 (JEB), 2025 WL 985447, at *2 (D.D.C. Apr. 2, 2025); *see Alpine*, 121 F.4th at 1330–31 ("Alpine has not demonstrated at this time that it is entitled to a preliminary injunction against any sanctions short of expulsion.")

Here, Lukezic does not allege an imminent, unreviewable expulsion. *See generally* Compl. Indeed, he cannot. Because he is not a FINRA "member"—that is, a broker-dealer *firm*—Lukezic does not face even the possibility of expulsion; at most, he faces a "bar" from associating with any FINRA member firm. *See Alpine*, 121 F.4th at 1331 n.3. ("[A] bar may be meaningfully different from expulsion of a FINRA member firm since a person barred from trading securities can pursue other work while appealing to the SEC, while a firm organized for the purpose of trading securities cannot."). Thus, in this context, *Alpine* squarely forecloses the contention that any allegedly unconstitutional delegation to SEC or FINRA gives rise to an irreparable injury.

Lukezic's claims of irreparable harm based on the Seventh Amendment and the Due Process Clause are no different. It is well established that in the Seventh Amendment context, "the harm resulting from the denial of a jury trial can be remedied on appeal, even after the case has already been tried" because a reviewing court can "simply order[] a new trial." *Ponte v. FDIC*, No. 24-cv-2379 (APM), 2024 WL 4730602, at *8 (D.D.C. Oct. 11, 2024) (collecting cases). Likewise, in the Due Process context, an injury must be "above-and-beyond being required to participate in a constitutionally defective proceeding." *Meta Platforms, Inc. v. FTC*, 723 F. Supp. 3d 64, 82–83 (D.D.C. 2024). Where subsequent judicial review "could fully vindicate" Lukezic's claims of constitutional violations, there is no irreparable harm. *John Doe Co.*, 849 F.3d at 1135 (citation modified). Here, if Lukezic is ultimately sanctioned by FINRA, he may obtain judicial

5

review of that sanction, his constitutional claims, and any procedural deficiencies in FINRA's adjudicative process through the judicial review scheme set forth in the Securities Exchange Act. *Alpine*, 121 F.4th at 1334 (citing *Deaver v. United States*, 483 U.S. 1301, 1303 (Rehnquist, C.J., in chambers)).

> **B.    Monetary Loss and Reputational Harm**

Lukezic's next theory of irreparable harm is based on the loss of profits and reputational goodwill stemming from FINRA's publications about the pending proceedings. Mot. at 17–18. But in the D.C. Circuit, it is "well settled that economic loss does not, in and of itself, constitute irreparable harm," *Wisc. Gas Co.*, 758 F.2d at 674, "especially when it is nothing more than speculation about how third parties might respond to routine regulatory investigations," *John Doe Co.*, 849 F.3d at 1134–35. "Monetary loss, even irretrievable monetary loss, may constitute irreparable harm only if it is so severe as to cause extreme hardship to the business or threaten its very existence." *Mylan Lab'ys Ltd. v. FDA*, 910 F. Supp. 2d 299, 313 (D.D.C. 2012). "[E]ven unrecoverable economic losses do not constitute irreparable harm . . . if they do not spell financial disaster for the moving party." *Watson Lab'ys, Inc. v. Sebelius*, No. 12-cv-1344 (ABJ), 2012 WL 13076147, at *3 (D.D.C. Oct. 23, 2012). The "loss of business opportunities, market share, and customer goodwill are typically considered to be economic harms." *Air Transp. Ass'n of Am. v. Exp.-Imp. Bank of the U.S.*, 840 F. Supp. 2d 327, 335 (D.D.C. 2012)

Lukezic does not meet the high bar required to show that the "very existence" of his business is threatened. *Mylan Lab'ys*, 910 F. Supp. 2d at 313; *Nat'l Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34, 52 (D.D.C. 2011) ("While Mr. Johnson's representations raise legitimate concerns about the current and future health of his company, his declaration falls short of what is necessary to merit a finding of irreparable harm."). Summary allegations of "lost profit," and even the loss

of an alleged $25 million funding opportunity, fall short. Lukezic Decl. ¶¶ 4-5, Dkt. 1-3; *see Mylan Lab'ys, Inc. v. Leavitt*, 484 F. Supp. 2d 109, 123 (D.D.C. 2007) ("Monetary figures are relative, and depend for their ultimate quantum, on a comparison with the overall financial wherewithal of the corporation involved.").

Also fatal to Lukezic's motion, these economic harms do not directly stem from Lukezic's asserted constitutional violations. *See Wisc. Gas Co.*, 758 F.2d at 674 (noting an irreparable injury must be a "direct result" of the challenged agency action). Lukezic asserts that his lost business results from "FINRA's continuous publication of false allegations" against him. Lukezic Decl. ¶ 8. But FINRA's publication of Lukezic's alleged misconduct is distinct from any violations of his due process rights, jury trial rights, or the nondelegation doctrine.[1] FINRA is required to maintain its Central Registration Depository of disciplinary actions under 15 U.S.C. § 78o-3(i)(1)(B), and Lukezic does not purport to challenge the constitutionality of that statute.

## CONCLUSION

In sum, the Court finds that Lukezic has not shown that he will suffer irreparable harm absent immediate relief. Accordingly, it is

**ORDERED** that the plaintiff's Motion for a Preliminary Injunction, Dkt. 1, is **DENIED**.

_____
DABNEY L. FRIEDRICH
August 10, 2025                                                           United States District Judge

---

[1] Lukezic alleges, for the first time in his reply brief, Dkt. 43, that FINRA's publication constitutes defamation per se. But he does not assert defamation claims in his complaint, and the Court will not consider claims or issues raised for the first time in a reply brief. *See Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008) (finding arguments raised for the first time in a reply brief to be forfeited).